### The City of Detroit v. Patrick Laughna.

*Detroit House of Correction: Misconduct of officers: Liability of city.*   The city of Detroit is not responsible for the misconduct of the officers of the Detroit house of correction towards the prisoners.

*Detroit House of Correction: Custodian: Prisoners: Officers: State agents.* Under the act of 1861, the government of the prison having been put under the control of a board of inspectors, and the common council having no voice in its internal management or in the selection of its officers, other than the superintendent, whose powers and duties are all governed by the statute, the city cannot be regarded as custodian of the prison or as jailer and guardian of the prisoners; the officers are not city agents and the city has no means of directing or of checking their action under the law, and therefore cannot be liable for their doings.

*Prisons: Public places of detention: Public laws.*   All criminal prisons are and must be public and not private places of detention, and no imprisonment can be lawful that is not authorized by public laws.

*Submitted on briefs June 15.   Decided October 4.*

Error to Wayne Circuit.

*D. C. Holbrook,* for plaintiff in error, cited: *Fisher v. Boston,* 10 Mass., 57; *Hafford v. New Bedford,* 16 Gray, 297; *Jewett v. New Haven,* 38 Conn., 368; *Walcott v. Inhab. of Swampscott,* 1 Allen, 101; *Buttrick v. Lowell,* 1 Allen, 172; *Small v. Danville,* 51 Me., 359; *Wharton on Negligence,* § 191; *Shearman & Redfield on Negligence,* 163–6.

*B. T. Prentis,* for defendant in error, cited: *Johnson v. Municipality,* 5 La. An., 100; *Highway Comrs. v. Martin,* 4 Mich., 557; *Detroit v. Corey,* 9 Mich., 165; *Bailey v. Mayor of N. Y.,* 3 Hill, 531; *Detroit v. Blackeby,* 21 Mich., 84; *Barton v. Syracuse,* 36 N. Y., 54; *West v. Brockport,* 16 N. Y., 161; *Henley v. Mayor, etc.,* 5 Bing., 91; *Mayor of Lynn v. Turner,* Cowp., 86; *Rochester W. L. Co. v. Rochester,* 3 N. Y., 463; *Hutson v. Mayor,* 9 N. Y., 163; *Sheldon v. Kalamazoo,* 24 Mich., 383; *Park Comrs. v. Com. Council,* 28 Mich., 228; *Oliver v. Worcester,* 102 Mass., 449; *Eastman v. Meredith,* 36 N. H., 295; *Lloyd v. Mayor,* 5 N. Y., 369.

CAMPBELL, J:

Laughna recovered a judgment against the city of Detroit for personal injuries which resulted from his being compelled by the officers of the House of Correction to take a cold bath under improper conditions and subsequent improper exposure in a cold cell. It is to be presumed that his treatment was such as to deserve condemnation, inasmuch as he was awarded substantial damages. The case is brought into this court to determine whether the city is responsible for the misconduct of the prison officers.

We have not been able to discover any principle on which that liability can be maintained. The city, indeed, built the prison, and has an interest in its finances, as it is responsible to a certain degree for its expenses; but after the

house was built under provisions of the city charter, which may or may not have been legally sufficient to provide for its future management, the legislature, either discovering defects, or, more probably, recognizing the manifest impropriety of allowing a prison to be managed by a city council, passed a statute which removed any doubt concerning the legal position of that establishment. On the 15th of March, 1861, an act was passed entitled "An act to establish the Detroit House of Correction and authorize the confinement of convicted persons therein."

By this act the government of the prison was put under the control of a board of inspectors, of whom three were to be appointed by the common council, on the nomination of the mayor, and in addition to these, the mayor and the chairman of the board of state prison inspectors were made *ex officio* members. The regulation and discipline were to be under rules adopted by the board, leaving the council no voice except concerning the approval of rules relating to salaries and compensation of officers and employés. There is no very important power which the council can exercise without the concurrence of the inspectors, except in the selection of the superintendent, whose powers and duties are all governed by the act of 1861 and the general laws of the state. Any interference whatever by the common council, either in the selection of inferior officers or in the internal management of the prison, would be unlawful and nugatory.

While it has at various times in legal experience been customary to allow and sometimes to compel prisons to be built and maintained by larger or smaller municipal corporations, yet all criminal prisons are and must be public and not private places of detention, and no imprisonment can be lawful that is not authorized by public laws. In England it is settled that all prisons, by whomsoever kept, are the king's prisons (2 *Inst.*, *100*, *589; Ex parte Evans, 8 T. R.*, *172*), and no new prison can be erected except by act of parliament.—2 *Inst. 705.*

The whole subject of personal liberty is one of general

state concern, and imprisonment in all its incidents has always been regulated by statute. The law of 1861, adopting the house of correction as a public prison, has provided for a state representative on the governing board, and has provided expressly, and has not left to the action of the common council to determine, under whose control its regulation shall be placed.

It is impossible under such a law to regard the city of Detroit either as custodian of the prison or as jailer and guardian of the prisoners. The officers are not city agents, and the city has nothing to do with their responsibility. It has no means of directing or of checking their action under the law, and the liability to respond for their misconduct cannot be laid upon the municipality, between whom and them there is no relation of agency or service.—*Yorke v. Chapman, 11 Ad. & El., 813.*

The declaration shows no cause of action, inasmuch as judicial notice must be taken of the statute. The judgment must be reversed, with costs of both courts. No new trial would be proper, as the record shows no liability.

The other Justices concurred.