ROTTSCHAFER *v.* CITY OF EAST GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—NOTICE OF IN-JURY.

One seeking damages from a city because of injuries received due to defect in a sidewalk must give notice to the city within 60 days of the injury of the location and nature of the defect (CL 1948, § 242.8; East Grand Rapids City Charter, ch 18, § 15).

2. SAME—NOTICE OF DEFECT IN SIDEWALK.

The notice to the city of a claimed defect in a sidewalk is a condition precedent to recovery of damages by a plaintiff for injuries sustained (CL 1948, § 242.8; East Grand Rapids City Charter, ch 18, § 15).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 25 Am Jur, Highways § 550; 38 Am Jur, Municipal Corporations §§ 673, 674.

[4] 25 Am Jur, Highways § 558; 38 Am Jur, Municipal Corporations § 699.

[4] Variance between notice of claim against municipality and proof as regards cause or locality of accident. 68 ALR 1532.

[5] 25 Am Jur, Highways § 559; 38 Am Jur, Municipal Corporations § 702.

[5] Waiver of, or estoppel to assert, failure to give notice of claim of injury as condition of liability of municipality, county, or other governmental agency for injury from defect in street, road, or other public place. 82 ALR 749; 153 ALR 329.

3. SAME—PURPOSE OF NOTICE OF DEFECT IN SIDEWALK—INVESTIGA-
TION—LIMITATION ON PLAINTIFF.

    The purpose of the notice to a city of a claimed defect in a
sidewalk is to afford opportunity to investigate and to confine
the plaintiff substantially to the character of the defect alleged
in the notice and claimed to have caused injury and consequent
liability of the city (CL 1948, § 242.8; East Grand Rapids
City Charter, ch 18, § 15).

4. SAME—NOTICE OF DEFECT IN SIDEWALK—PLEADING—FATAL VARI-
ANCE.

    Variance between claimed defect in sidewalk in statutory notice
to city wherein plaintiff stated there was a "bad break in
the sidewalk" and allegations in declaration particularly de-
scribing the break as "between 2 concrete slabs comprising
the surface * * * so that a gap or opening approximately
6 inches wide and ranging from 3 to 4 inches in depth * * *
extending virtually the entire width of the sidewalk * * *
a wedge-shaped aperture" in which plaintiff's foot became
wedged while walking thereon at 11 p.m. constituted a fatal
variance which, as a matter of law, precluded her recovery of
damages for injuries sustained (CL 1948, § 242.8; East Grand
Rapids City Charter, ch 18, § 15).

5. SAME—NOTICE OF DEFECT IN SIDEWALK—WAIVER.

    City officials have no authority to waive the statutory require-
ment relating to written notice to city of defect in sidewalk
which caused injuries to plaintiff (CL 1948, § 242.8; East
Grand Rapids City Charter, ch 18, § 15).

Appeal from Kent; Verdier (Leonard D.), J. Sub-
mitted January 4, 1955. (Docket No. 1, Calendar No.
46,311.) Decided March 9, 1955.

Case by Wilhelmina Rottschafer against the City
of East Grand Rapids, a municipal corporation, for
injuries sustained in fall on sidewalk. Judgment
for defendant notwithstanding verdict. Plaintiff
appeals. Affirmed.

*Mitts, Smith & Haughey,* for plaintiff.

*Allaben & Davids,* for defendant.

SHARPE, J.  This is an action to recover damages for personal injuries sustained by plaintiff in a fall on a sidewalk of defendant city of East Grand Rapids between the hours of 10 and 11 p. m., on May 20, 1952.  Plaintiff is a married woman, residing with her family about a quarter of a block from where the accident occurred.  The accident occurred opposite the premises at 703 Cambridge boulevard.

On the evening in question plaintiff had walked to a nearby drug store.  She was wearing a rain-type coat, and thick composition-soled walking shoes.  The night was dark and there was a large tree between the boulevard light and the place on the sidewalk where she sustained her injury.  She claims that while walking her foot became caught under the raised northerly edge of a cement sidewalk slab which had become hollowed out by erosion or crumbling forming a projecting crag.  Plaintiff testified as follows:

"That sidewalk is the typical, usual cement walk made up of blocks of cement or cement with cracks, originally put in there so that they could be replaced. * * * There is a big tree immediately east of the cement block or easterly edge of the cement sidewalk and just slightly north of a division between these 2 cement blocks.  That is the way I have it pictured in my mind.  That tree kind of raised the sidewalk up a little, broke it open, I would say, right flush with the tree and it extended to about the center of the sidewalk, and it was about, well I said, didn't I say about 6 or 7 inches wide and about 3 inches deep, and it extended almost half way, a good half way as it narrowed down to the southern block. * * * The point where my foot tipped is in the north cement block at the northerly edge of the break, which break is in the southerly part of the northerly block. The root of the tree caused this northerly block to rise up; it caused both the northerly and the south-

erly to rise and break, forming a hole. I don't know whether that hole was specifically extended to the southerly block or not. I didn't measure it myself. It is my mental measure. I don't remember whether there was any break in the southerly block at the north edge of the southerly block which would be adjacent to the break I described in the south part of the northerly block, but I know it was raised. It was raised about the same as the northerly break about 3 inches so that the northerly edge of this break in the southerly part of the northerly block was about 3 inches."

As a result of the accident plaintiff suffered severe injuries and was confined to her bed for about a month. About a week after the accident, on May 27, 1952, plaintiff caused to be mailed a letter to the city of East Grand Rapids, a copy of which reads as follows:

"Honorable Mayor and City Commission,
"East Grand Rapids.

*"Gentlemen:*
"On Tuesday, May 20, 1952, at 11:00 p. m. I was walking south on Cambridge Blvd. between Sherman and Franklin. At 703 Cambridge, I stumbled over a bad break in the sidewalk, and fell headfirst to the sidewalk, striking the left side of my face and body on the pavement.

"Dr. Richard DeMol attended me the following day, making an examination of my left eye and arm. He diagnosed the eye injury serious enough to call in Dr. Lubert L. Docter, an eye specialist. He ordered me to Blodgett hospital for X-rays and has been attending me since the accident.

"At this time, the eye is still in serious condition, but I feel that I should make this report to you regarding this accident at this time.

"I feel that I will be entitled to any damages that I may have incurred.
"Very truly yours,
"Mrs. D. (Wilhelmina) Rottschafer."

On November 26, 1952, plaintiff sent a further notice to the city, in which she stated: "I stubbed my toe on a very bad break in the sidewalk.   *   *   * When I stubbed my toe, I stumbled forward and fell on a very bad break in the next block of the cement sidewalk."

Plaintiff's declaration states in part:

"That said sidewalk in said location was in a defective and dangerous condition in that a break had occurred between 2 concrete slabs comprising the surface thereof and the areas adjacent to said break had eroded and crumbled so that a gap or opening approximately 6 inches wide and ranging from 3 to 4 inches in depth had occurred between the 2 slabs extending virtually the entire width of the sidewalk; that the northerly end of the southerly slab was raised approximately 4 inches above the southerly end of the northerly slab in the area of said break, the under part of the raised edge had become hollowed out by erosion and crumbling so that a wedge-shaped aperture existed under the top surface thereof, and the bottom of the hole existing between said slabs was filled with loose and uneven particles of concrete and dirt.   That said condition had existed for several months prior to May 20, 1952, but was not known to the plaintiff and that it was then and there too dark for said condition to be visible to plaintiff.

"That said sidewalk at said location not being in such reasonable repair as to be reasonably safe and convenient for public passage, defendant failed to appropriately warn pedestrians of the dangerous condition thereof or to repair the same and remove the defects therein, all in violation of the duties imposed upon defendant by the law.

"That as a result of the aforesaid negligence of defendant and without contributory negligence on the part of plaintiff, plaintiff's foot at said time and place became wedged under the raised portion of the concrete slab hereinbefore described, in such a man-

ner that plaintiff was thrown off her balance and commenced to fall forward before she could extricate her foot from under the concrete slab."

The cause came on for trial before a jury. At the close of plaintiff's proofs, defendant made a motion for a directed verdict for the reason that the first notice served on the city was insufficient to comply with the statute as giving proper notice to the city; that the declaration and testimony offered by plaintiff embraced a different theory of how the accident happened than was alleged in her first notice to the city and that there was no proof adduced that the city had the statutory notice of a so-called "trap" in the sidewalk. The trial court took the motion under advisement under the Empson act.* At the close of all evidence defendant renewed its motion for a directed verdict. The trial court denied the motion and submitted the cause to the jury, who returned a verdict in favor of plaintiff.

On April 29, 1954, the trial court entered an order setting aside the verdict of the jury and entered a judgment in favor of defendant.

Plaintiff appeals and urges that there was no fatal difference between plaintiff's statutory notice of her accident to defendant city and her declaration and proofs.

The trial court, in an opinion filed prior to setting aside the verdict, stated:

"On May 27, 1952, plaintiff did give notice of her claim. The notice stated that she 'stumbled over a bad break in the sidewalk and fell head first to the sidewalk.'

"Again on November 26, 1952, she sent a supplemental notice to defendant in which she stated—'I stubbed my toe on a very bad break in the sidewalk. * * * When I stubbed my toe, I stumbled forward

---

* CL 1948, § 691.691 (Stat Ann 1953 Cum Supp § 27.1461).—RE-PORTER.

and fell on a very bad break in the next block of the cement sidewalk.'

"It will be noted that in neither of these notices did plaintiff claim that the break in the walk or the depression was of such size, shape and character as to form a trap in which her foot may have been caught.

"At the hearing before a committee of the defendant's city commission, held to pass upon the claim, plaintiff testified that it was simply a depression, that the front of her foot tipped into the hole but was not caught there—that 'it wasn't a trap exactly.'

"Upon the trial of the case, however, the plaintiff's theory takes on a changed aspect. Instead of being a case where the plaintiff fell because of one slab of the cement walk being raised above the other, thus causing a depression in the walk, it becomes a case where she fell because her foot was caught in a depression of such size, shape and character as to form a trap."

Plaintiff was required, both by statute and provisions of the East Grand Rapids city charter to give notice to the defendant city within 60 days after the date of her injury of the "location and nature of said defect." The statute involved, being CL 1948, § 242.8 (Stat Ann § 9.598), provides as follows:

"In the event damages are sustained by any person * * * because of the defective condition of any * * * sidewalk * * * where written notice of such inquiry [injury] and defect is now required by law to be served upon such village or city before recovery can be had, it will be necessary to show that such person did serve written notice upon said city or village within 60 days from the time of the happening of such injury. * * * The notice will specify the location and nature of said defect, the injury sustained, and the names of the witnesses known at the time by claimant."

Section 15 of chapter 18 of the charter of the city of East Grand Rapids provides as follows:

"The city shall not be liable for unliquidated damages for personal or other injuries, unless the person suffering the injury or sustaining the damage, or someone in his behalf, shall serve a notice in writing upon the city, within 60 days after such injury shall have occurred, which notice shall specify the location and the nature of the defect, the injury sustained and the names of the witnesses and facts of the happening of the accident complained of, which are known at that time by said claimant. The failure to so notify the city within the time and in the manner specified herein shall exonerate, excuse and exempt the city from any and all liability on account of any such injury."

Defendant relies upon *Harrington* v. *City of Battle Creek,* 288 Mich 152, in support of its claim that there was a fatal variance in the claim filed by plaintiff against defendant city and the declaration filed in said cause in that the notice filed with the city failed to make any claim of a trap. In the above case plaintiff failed to give the city of Battle Creek any notice of the claim of a trap causing her fall and injury on the city sidewalk. We there said (pp 155, 156):

"The notice did not state a defect in the sidewalk for which the city would be liable. *Jackson* v. *City of Lansing,* 121 Mich 279, and cases therein cited.

"The declaration first filed alleged the accident and the defect in the sidewalk, as stated in the claim against the city but, on motion of defendant to dismiss for not stating a cause of action, the declaration was amended by alleging that plaintiff's toe caught under the edge of the walk projecting over the opening and that such trap of her foot caused her to fall.

"Had the notice of claim stated the nature of the defect and cause of injury, as set forth in the amend-

ed declaration, there might be liability. *Cornell* v. *City of Ypsilanti,* 212 Mich 540. The variance between the notice of claim and the amended declaration was of substance, and as the initial step by plaintiff to fasten liability failed, all subsequent action based thereon lacked the necessary starting point. The city was entitled to notice of the claimed defect upon which liability was sought at the trial.

"The notice is a condition precedent to right of recovery. *Moulthrop* v. *City of Detroit,* 218 Mich 464; *Gable* v. *City of Detroit,* 226 Mich 261.

"The variance between the defect alleged in the notice and the defect claimed at the trial to have caused the injury was fatal to right of recovery. See *Lane* v. *Cray,* 50 RI 486 (149 A 593, 68 ALR 1530); *Olcott* v. *City of St. Paul,* 91 Minn 207 (97 NW 879); *Gagan* v. *City of Janesville,* 106 Wis 662 (82 NW 558); *Dooling* v. *City of Malden,* 258 Mass 570 (155 NE 636).

"The claim filed with the city by plaintiff stated no liability on the part of the city. The purpose of the notice to the city is not alone to afford opportunity for investigation but as well to confine plaintiff substantially to the character of the defect alleged in the notice and claimed to have caused injury and consequent liability of the city."

In our opinion there was a fatal variance between plaintiff's statutory notice of her accident to defendant city and the declaration and proofs in her subsequent action against the city.

It is urged by plaintiff that assuming her notice to the city was defective, such defect was waived by defendant's officials having visited the scene of the accident and ordered it repaired within the 60-day period required by the city ordinance and the statute, by failing to require of plaintiff more particulars, and by failing to notify plaintiff that her claim was unsatisfactory and scheduling a hearing for a determination of the legal sufficiency of the claim.

In our opinion the city officials of East Grand Rapids have no authority to waive the statutory requirement relating to notice.

In *Holtham* v. *City of Detroit,* 136 Mich 17, plaintiff suffered injuries resulting from a defective sidewalk. No notice was given to the law department of the city of Detroit, but within 3 months plaintiff saw Mr. Hally, an assistant city attorney, who advised him to present his claim to the aldermen. The claim was presented, and notice was given to plaintiff to appear with his witnesses. He did so and his claim was denied. An action was instituted by plaintiff and a jury rendered a verdict in his favor. Upon appeal, the judgment was reversed. We there said (p 20):

"Mr. Hally's authority to deal with the plaintiff would not have been lessened had his connection with the office been determined before such subsequent hearings, or if the city had been represented at those hearings by some other attorney. His authority to waive the notice must therefore be determined by the statute. This statute requires a written notice of the time, place, cause, and nature of plaintiff's injury to be served on the corporation counsel or his chief assistant. We cannot presume that this statute was passed in the interest of the corporation counsel. We must presume that it was passed in the interest of the city, and it is to the obvious advantage of the city that its attorney be furnished with this writing signed by plaintiff. Such a writing serves a purpose that can be performed by no oral statement. Assuming, without deciding, that the officers named in the statute have the power to waive this notice, we are unable to see force in the reasoning by which it is contended that any inferior officer can waive it. Certainly the statute gives him no authority to waive it, and it is equally clear that the city of Detroit has not given him that authority. We do not think it will be contended that the cor-

poration counsel can delegate authority to waive the statute, and, if he could, there is no evidence that he delegated it in this instance."

Also, see *Pender* v. *City of Salisbury,* 160 NC 363 (76 SE 228).

In the case at bar defendant was entitled to a directed verdict at the close of plaintiff's proofs. The trial court was not in error in setting aside the verdict and entering judgment for defendant. Costs awarded to defendant.

CARR, C. J., and BUTZEL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.

SMITH, J., took no part in the decision of this case.