Bernard E. DIXON, Plaintiff,

v.

John B. DUNCAN, Donald Clemmer, Paul F. Pegelow, Defendants.

Civ. A. No. 2906–M.

United States District Court
E. D. Virginia,
Alexandria Division.

May 21, 1963.

158

Bernard E. Dixon, pro se.

Plato Cacheris, First Asst. U. S. Atty., Alexandria, Va., Chester H. Gray, Corp. Counsel, District of Columbia, Washington, D. C., for defendants.

LEWIS, District Judge.

The petitioner, a prisoner in the District of Columbia Reformatory at Lorton, Virginia, seeks to enjoin the threatened integration of the last remaining all-white dormitory (#14) in that institution.

He says Paul F. Pegelow, Superintendent of the Lorton Reformatory, assembled the men housed in Dormitory #14 and informed them that he intended to integrate that all-white dormitory pursuant to the order of his immediate superior, Donald Clemmer, Director of the District of Columbia Department of Corrections. The proposed integration was to be made on a forced or compulsory basis.

The prisoner contends that such integration violates his civil rights in that it is not being administered on a non-discriminatory basis. He also says his physical welfare will be endangered because of the known rate of communicable diseases among the numerous colored inmates, and that this commingling of the races in the same dormitory, due to the large number of Muslims among the colored population, will cause dissension and unnecessary strife. He also complains of the obsolescence and inade-

quacy of the existing plumbing facilities in Dormitory #14.

A hearing was granted and the prisoner was permitted to call five inmates as witnesses in support of his allegations; and the defendants were given the opportunity of presenting such witnesses as they deemed necessary.

From the evidence thus received it is clear that Superintendent Pegelow was ordered by Donald E. Clemmer to integrate Dormitory #14 as soon as practicable, and that the white prisoners involved violently objected on various grounds and requested that the proposed integration be delayed pending the hearing of the complaint by this Court or the United States District Court for the District of Columbia (similar suits were filed in both Courts).

Director Clemmer's order stemmed from a policy order, promulgated July 17, 1962, by the District of Columbia Government regarding non-discrimination, the pertinent portion of which reads as follows:

"3. *Non-discrimination in use of facilities and services.*

(a) *Policy.* Every official and employee under the supervision of the District Commissioners in any department, agency, or instrumentality, or any of its constituent units subject to this order shall act without regard to race, religion, color, ancestry, or national origin in all matters relating to the use and enjoyment of, or assignment or entitlement to, any public facility, accommodation, service or treatment subject to his control, authority, or supervision unless specifically required by statute to do otherwise."

Pursuant to this policy order, three of the formerly all-white dormitories at Lorton have been integrated, all on a voluntary basis.

At present there are approximately 1,500 prisoners in this District of Colum-

bia Reformatory located at Lorton, Virginia—169 white and 1,331 colored, of which 301 are known to be Muslims. Prisoners are assigned to the various dormitories by the Assistant Superintendent. These assignments are made upon the basis of the individual prisoner's past record, the need for security confinement, work habits, and so forth. Negro inmates are assigned to an all-colored dormitory if they object to being assigned to an integrated dormitory. White prisoners are not given this choice.

There is a total of 23 dormitories in the Lorton Reformatory, 19 of which are all negro, 3 of which are integrated, and 1 all white. The all-white dormitory is known as #14 and is a security building (window-barred and locked at night), housing 56 criminals. This dormitory has two open showers, commodes, urinals and wash basins for the joint use of the inmates. The prisoners sleep on individual cots in a large dormitory-type room.

The white prisoners housed in #14, who testified in this case, stated that serious difficulties would follow if they are forced to sleep in the same room with colored inmates, and particularly so with those of the Muslim belief. They had no objection to working, eating, or using the library and recreation facilities, with the colored inmates.

Both Superintendent Pegelow and Director Clemmer testified that the proposed integration of #14 would be on a compulsory basis insofar as the white prisoners are concerned, and that any white prisoner objecting or causing a disturbance would receive punitive punishment; that colored inmates assigned to Dormitory #14 would be on a voluntary basis, and that colored inmates would not be required to live in this or any other white dormitory against their will and would not be punished for so refusing.

Both of these prison officials testified that the proposed integration of Dormitory #14 was not necessitated for security, health or other penal reasons.

Upon this record, discrimination in the housing of white prisoners at Lorton has been established.[1] This, say the defendants, is non-justiciable, for such matters as the housing of prisoners rests solely in the discretion of the prison officials and their superiors in the executive department.

[2-6] It is true that prison officials are vested with wide discretion in safeguarding prisoners committed to their custody, and discipline reasonably maintained is not under the supervisory direction of a federal court. Under ordinary circumstances, disapproval of prison rules and regulations is no basis for a prisoner coming into a federal court seeking relief even though he claims the restriction is in violation of his constitutional rights.[2] But here the complaint is not disapproval of prison rules or regulations. It is the "unlawful discrimination" in housing assignments. The order to integrate Dormitory #14 was not predicated upon or necessitated for the safekeeping of prisoners committed to the custody of the prison officials. It stemmed solely from the policy order of the District of Columbia Government, which facially commands execution on a non-discriminatory basis. This was not done. Colored inmates were given the choice of living in an integrated or all-colored dormitory. The white inmates of #14 will be compelled to integrate or suffer punitive punishment.

"There can be no doubt that a district court has power to grant injunctive relief where there has been a deprivation of civil rights * * * and * * *, there is no question that the District of Columbia is included in the phrase 'any State or Territory' within the meaning of the Act." Sewell v. Pegelow, 291

---

1. The prisoner did not satisfy the Court that his health would be impaired by the proposed integration or that the plumbing facilities were obsolete or inadequate for the purposes intended.

2. See United States ex rel. Morris v. Radio Station WENR, 209 F.2d 105 (7th Cir.).

F.2d 196 (4th Cir.) Incarceration in a penitentiary does not deprive a prisoner of the right to invoke the provisions of the Civil Rights Act. Here the prisoner seeks only the equal protection of the law. The Federal Constitution is color blind. It is equally as unconstitutional to discriminate against a white man as it is to discriminate against a colored man; and an appropriate order restraining the Lorton prison officials from so doing will be entered herein.

Nothing herein shall be construed as prohibiting the prison officials of the Lorton Reformatory from integrating the dormitories at Lorton so long as it is effected without regard to color or creed.

The motion to dismiss John B. Duncan is Granted and an order will be entered dismissing him as a party defendant. He did not appear and was not served with process.

The United States Attorney for this District, in cooperation with the Corporation Counsel for the District of Columbia, should prepare an appropriate order in accordance with this opinion and it will be accordingly entered.