GREEN v. DEPARTMENT OF CORRECTIONS

1. PRISONS—DETROIT HOUSE OF CORRECTION—LEGISLATIVE CREATION.
   The Detroit House of Correction is not a city prison facility; it exists as a creation of the state legislature, but not every prisoner now confined there is a state prisoner.

2. PRISON—CORRECTIONS COMMISSION—JURISDICTION.
   The Michigan Corrections Commission, subject only to the constitutional powers vested in the executive and judicial departments, has exclusive jurisdiction over all state penal institutions, correctional farms, probation recovery camps, prison labor and industry, wayward minor programs, youthful trainee institutions, and programs for the care and supervision of youthful trainees (MCLA § 791.204).

3. PRISONS—DETROIT HOUSE OF CORRECTION—SUPERVISION—CORRECTIONS COMMISSION. .
   The Detroit House of Correction, although managed by a superintendent appointed by the City of Detroit, is subject to the same standards of supervision and inspection by the Corrections Commission as is applicable to all other state prison facilities, because the Detroit House of Correction is a prison facility within this state (MCLA §§ 791.262; 802.1, et seq.).

4. PRISONS — DETROIT HOUSE OF CORRECTION — DEFECTIVE PUBLIC BUILDING — LIABILITY OF STATE.
   The Corrections Commission was a proper party defendant to a suit by a prisoner at the Detroit House of Correction who was injured while working in the prison shop where the prisoner had been convicted of a crime, felonious assault, proscribed by state statute and where, at sentencing, the plaintiff had been committed to the Corrections Commission by delivery to

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur, Prisons and Prisoners § 2.
[2] 41 Am Jur, Prisons and Prisoners § 5.
[3–14] 41 Am Jur, Prisons and Prisoners § 17 et seq.

the Detroit House of Correction (MCLA §§ 791.204, 791.206, 791.262).

5. STATES—SOVEREIGN IMMUNITY—PUBLIC BUILDINGS.

 The State of Michigan does not enjoy sovereign immunity where the plaintiff was injured as a result of a defect in a public building (MCLA § 691.1406).

6. STATES—PUBLIC BUILDING—DEFINITION.

 A public building is one which exists as a benefit to the whole community and is operated and maintained by the governing body of that community.

7. PRISONS—PUBLIC BUILDINGS.

 Prisons and jails are public buildings, even though not open to the public, because they benefit the whole community and are operated and maintained by the government.

8. PRISONS—PRISONERS—STATUS—PUBLIC COMMUNITY.

 A prisoner is a member of the public community whether in or out of jail; however, when incarcerated, the prisoner is prevented, by law, from exercising the rights and privileges he enjoys as a free member of society.

9. FIXTURES—PERMANENT ATTACHMENT.

 Permanently attached fixtures in public buildings become part of those buildings.

10. PRISONS—FIXTURES—PRISON MACHINERY.

 A prison's defective planing machine which was anchored securely to the floor amounted to a defect in the prison, a public building, because permanently attached fixtures become part of the building.

11. MUNICIPAL CORPORATIONS — NOTICE OF CLAIMS — PURPOSE — STATUTES.

 Purpose of requiring a notice of a claim against a municipal corporation is (a) to give the municipal corporation an opportunity to ascertain the extent of the injuries and the incidents attending the accident while the occurrence is fresh in the minds of those who possess information on the subject and (b) to inform the municipality so that it can correct the defect giving rise to the injury (MCLA §§ 691.1404, 691.1406).

12. PRISONS—PRISONERS—NOTICE OF INJURY—STATUTES.

 Plaintiff's failure to comply with a statutory requirement that a notice of claim for injuries sustained because of a defective

public building against the State of Michigan be filed within 60 days did not bar plaintiff's claim where the plaintiff was incarcerated in prison during those 60 days and was, therefore, legally disqualified from suing (MCLA § 691.1406).

13. Prisons—Safety Conditions—State's Duty.
   No reason exists why the State should not meet the same standards of work safety in prisons as it has imposed on private industry, even though the prison-inmate relationship is not an employer-employee relationship within the contemplation of the labor standards act.

14. Prisons—Prisoners—Work-shop Injury—Right to Recover.
   Plaintiff was entitled to damages from the Corrections Commission for injuries sustained while working on a defectively maintained planing machine while a prisoner in the Detroit House of Correction.

Appeal from Court of Claims, William John Beer, J. Submitted Division 2 November 6, 1970, at Detroit. (Docket No. 8470.) Decided February 18, 1971. Leave to appeal granted April 23, 1971, 384 Mich 835.

Complaint by Amos Green against the Department of Corrections for damages for injuries incurred in an accident at a prison factory. Judgment for plaintiff. Defendant appeals. Affirmed.

*Lopatin, Miller & Bindes* (by *Michael H. Feiler*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Douglas Salisbury*, Assistant Attorney General, for defendant.

Before: Lesinski, C. J., and J. H. Gillis and Beasley,* JJ.

J. H. Gillis, J. Plaintiff pled guilty to felonious assault[1] and was sentenced to two years probation,

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 750.82 (Stat Ann 1962 Rev § 28.277).

the first 60 days of which were to be served in the Detroit House of Correction. While a prisoner, the plaintiff was assigned to work on a planing machine in the prison shop. On December 28, 1966, while using the machine, 1/2 of the plaintiff's middle finger of his right hand was amputated. At trial, plaintiff testified that the planing machine was without the proper protective shield and safety switch. He further testified, on cross-examination:

"Q. You said, Mr. Green, that the supervisor was in the area. Was he watching you while you were planing?

"A. No, he was in his office.

"Q. I see. But that was close by?

"A. Yes, close by.

"Q. Had you received any instruction on how to operate this machine prior to the time you started work on it?

"A. No, I didn't, no more than a fellow that was living out there, he showed me a few ideas, but he was leaving.

"Q. But you also testified on direct examination that you had called the attention of the people at the Detroit House of Corrections to the fact that you had had some experience with machines of this kind in the past?

"A. Yes, I had with two, I explained to Mr. Cromer that I was handy with tools."

Plaintiff filed a notice of intention to file a claim against the State of Michigan in the Court of Claims on March 1, 1967. The claim itself, which was filed on January 2, 1968, sought damages against the state for defendant's alleged negligence in failing to maintain safe working conditions. Defendant filed a timely motion for summary judgment, GCR 1963, 117.2, which was subsequently denied.

After all proofs had been taken, the lower court found that the plaintiff was injured and that the

proximate cause of that injury was the defendant's negligent maintenance of the planing machine in question. Plaintiff was awarded damages in the amount of $2,000.

This is a case of first impression. The defendant, State of Michigan, raises three issues on appeal. The state first argues that it is not a proper party defendant to this suit in that the state exercises no direct supervisory control over the Detroit House of Correction, and, therefore, that prison facility cannot be classified as a state penal institution.

Our Supreme Court has historically held that the Detroit House of Correction is not a city prison facility, but rather is one which exists as a creation of the legislature. *City of Detroit* v. *Laughna* (1876), 34 Mich 402; *City of Detroit* v. *Board of Water Commissioners* (1896), 108 Mich 494. Further, it was a state statutory offense[2] to which the plaintiff pled guilty, and at sentencing he was "committed to the Michigan Corrections Commission [a state agency] by delivery to the Detroit House of Correction, the place designated by the commission".

Subject only to the constitutional powers vested in the executive and judicial departments of this state, the Corrections Commission has exclusive jurisdiction over all state

"penal institutions, correctional farms, probation recovery camps, prison labor and industry, wayward minor programs and youthful trainee institutions and programs for the care and supervision of youthful trainees." MCLA § 791.204 (Stat Ann 1970 Cum Supp § 28.2274).

In addition, the Corrections Commission is empowered to appoint a director,[3] who is in turn em-

---

[2] Felonious assault, fn 1 *supra*, is punishable by confinement in a state prison for a maximum of four years.

[3] MCLA § 791.203 (Stat Ann 1968 Rev § 28.2273).

powered to make rules and regulations "for the management and control of penal institutions * * * and prison labor and industry", MCLA § 791.206 (Stat Ann 1970 Cum Supp § 28.2276).

MCLA § 791.262 (Stat Ann 1970 Cum Supp § 28.2322) provides in pertinent part that the Corrections Commission through its assistant director for penal institutions

"shall supervise and inspect local jails and houses of correction for the purpose of obtaining facts in any manner pertaining to the usefulness and proper management of said penal institutions and of promoting proper, efficient and humane administration thereof, and shall promulgate rules and standards with relation thereto   *   *   *   ."

Although the Detroit House of Correction is managed by a superintendent appointed by the City of Detroit, it, as a prison facility within this state, is subject to the same standard of supervision and inspection by the Corrections Commission as is applicable to all other state prison facilities.   MCLA § 802.1 *et seq.*   (Stat Ann 1948 Rev § 28.1811 *et seq.*).

This is not to say that every prisoner now confined to the Detroit House of Correction is a state prisoner and thus the state is responsible for his physical safety.  Rather, our examination of all appropriate statutes leads us to conclude that in the case now before us, plaintiff was a state prisoner at the time he incurred his injury.  The trial court held that the State of Michigan was a proper party defendant; we affirm that finding.

Secondly, defendant urges that it was error for the trial court to deny its affirmative defense of sovereign immunity.  We disagree.  We recognize that the state is statutorily immune from negligence liability except as that act has been modified.[4]  This

---

[4] MCLA § 691.1407 (Stat Ann 1969 Rev § 3.996[107]).

case, however, falls within one of those statutory exceptions, *i.e.,* a defect in a public building.[5]

Defendant argues that the Detroit House of Correction is not a public building in that it is not open to the public-at-large. This analysis begs the real issue.

A "public building" has been defined as:

"A building owned by a public body, particularly if it is used for public offices or for other public purposes". *Ballentine's Law Dictionary,* 3d ed.

Thus, a public building is one which exists as a benefit to the whole community and is operated and maintained by the governing body of that same community. *Cf. Cleveland* v. *City of Detroit* (1948), 322 Mich 172; Anno: What is "public buildings." 19 ALR 543. The Detroit House of Correction is such a building.[6]

Similarly, plaintiff is a member of the public community whether in or out of jail. The difference being that when incarcerated, he is prevented, by law, from exercising the rights and privileges he enjoyed as a free member of society.[7]

---

Even before the above statute was enacted, our Courts, like the majority of other jurisdictions, have slowly eroded this common law doctrine. Anno: Municipal immunity from liability for torts, 60 ALR2d 1198.

[5] MCLA § 691.1406 (Stat Ann 1969 Rev § 3.996[106]).

[6] Prisons have been deemed to be state institutions, MCLA § 21.71 (Stat Ann 1970 Cum Supp § 4.151). The state is responsible for the care and control of state institutions, MCLA § 19.141 (Stat Ann 1970 Cum Supp § 4.201); jails and prisons as public buildings, 18 McQuillin, *Municipal Corporations,* § 53.94, p 380.

[7] It would be illogical to describe prisoners as "private" citizens when in jail and as "public" citizens when free. These terms have been defined by the Michigan Supreme Court in *People* v. *Powell* (1937), 280 Mich 699, 702, 703, to mean: "The words 'public' and 'private' are generally used in contradistinction to each other. 'Private' is defined by Webster (New International, 2d Ed) as 'belonging to, or concerning, an individual person, company, or interest.' 'Public' is defined as 'of or pertaining to the people; relating to, belonging to, or affecting, a nation, State, or community at large;—opposed to private.' Bouvier (Rawle's 3d Rev) defines 'private' as 'affecting or belonging to individuals, as distinct from

Consequently, the state's liability in this cause of action accrued under its obligation to maintain and repair public buildings:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building." MCLA § 691.1406 (Stat Ann 1969 Rev § 3.996[106]).

The planing machine in question was anchored securely to the floor in the prison shop. Our courts have held that permanently attached fixtures in public buildings become part of those buildings. *Williams* v. *City of Detroit* (1961), 364 Mich 231; *DeNoyer* v. *City of Ann Arbor* (1967), 9 Mich App 26. Accepting the factual findings of the trial court as true,[8] we conclude, as did the lower court, that the safety defects in the planing machine amounted to defects in a public building.

---

the public generally;' and defines 'public' as 'the whole body politic, or all the citizens of the State. The inhabitants of a particular place.'

"Of the word 'public,' *Corpus Juris* says:

" 'In one sense, the "public" is everybody; and accordingly "public" has been defined or employed as meaning the body of the people at large; the community at large, without reference to the geographical limits of any corporation like a city, town, or county; the people; the whole body politic; the whole body politic, or all the citizens of the State.

" 'In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contradistinguishes them from a few. Accordingly, it has been defined or employed as meaning the inhabitants of a particular place; all the inhabitants of a particular place; the people of the neighborhood.' 50 C.J., pp 844, 845."

8 Findings of fact by the trial judge will not be disturbed unless those findings are shown to be clearly erroneous. At trial, the defendant did not contest the court's findings that the planing machine was not equipped with proper safety devices. GCR 1963, 517.1; *Airport Motel Corporation* v. *Burke, Burke, Ryan & Roberts* (1966), 4 Mich App 385; *Keller* v. *Paulos Land Company* (1966), 5 Mich App 246.

Defendant also argues that plaintiff failed to strictly comply with the notice provisions which existed as a condition precedent to his recovery.

"As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 60 days from the time the injury occurred, shall serve a verified notice on the responsible governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant." MCLA § 691.1406 (Stat Ann 1969 Rev § 3.996[106]).

"Notice to the state of Michigan shall be given as provided in section 4 * * * ." *Id.*

Section 4 of the act referred to above provides in part:

" * * * In case of the state of Michigan, such notice shall be filed in triplicate with the clerk of the court of claims. Filing of such notice as herein required shall constitute compliance with section 6431 of the [court of claims act], requiring the filing of notice of intention to file a claim against the state * * * ." MCLA § 691.1404 (Stat Ann 1965 Rev § 3.996[104]).

Defendant takes issue not with the sufficiency of the notice,[9] but with the fact that the claim was not filed within the 60 days as required by statute. We recognize the authority cited by defendant[10] that the

---

[9] The plaintiff's notice of intention to file a claim pursuant to MCLA § 600.6431(3) (Stat Ann 1962 Rev § 27A.6431[3]), which was filed with the Court of Claims on March 1, 1967, contains substantially all the information required by the notice provision under MCLA § 691.1406 (Stat Ann 1969 Rev § 3.996[106]): the exact location; the nature of the defect; the injury sustained; and the names of witnesses known at the time of the claim.

[10] *Bement* v. *Grand Rapids & Indiana Railway Co.* (1916), 194 Mich 64; *Hughes* v. *City of Detroit* (1953), 336 Mich 457; *Orcutt* v. *Corrections Department* (1961), 362 Mich 465; and *Trbovich* v.

Supreme Court, in the past, has required strict compliance with this notice provision before they have permitted any claim to accrue. However, we also recognize that the modern trend is to liberally construe notice provisions similar to that required by our statutes. *Cf.* Anno: 65 ALR2d 1278; *Kustasz* v. *City of Detroit* (1970), 28 Mich App 312; *Grubaugh* v. *City of St. Johns* (1970), 384 Mich 165.

The purpose of such notice provisions is two-fold:

"They (a) give the [municipal corporation] an opportunity to ascertain the extent of the injuries and the incidents attending the accident while the occurrence is fresh in the minds of those who possess information on the subject; and (b) inform the municipality so that it can correct the defect giving rise to the injury." 2 Antieau, Municipal Corporation Law, § 11.23, p 98.56.

Michigan cases in accord: *Swanson* v. *City of Marquette* (1959), 357 Mich 424; *Meredith* v. *City of Melvindale* (1969), 381 Mich 572. We note that at the time of plaintiff's injury the prison authority was already aware of the then-existing unsafe condition.[11] Thus, the State is liable for permitting this unsafe condition to persist. MCLA § 691.1406 (Stat Ann 1969 Rev § 3.996[106]).

In *Grubaugh* v. *City of St. Johns, supra,* the Supreme Court held that the plaintiff's cause of action against defendant was not to be barred by noncom-

*City of Detroit* (1966), 378 Mich 79.   Additional authority for this proposition can be found in *Canfield* v. *City of Jackson* (1897), 112 Mich 120; *Germaine* v. *City of Muskegon* (1895), 105 Mich 213; *Boyle* v. *City of Saginaw* (1900), 124 Mich 348; *Lindley* v. *City of Detroit* (1902), 131 Mich 8; *Ridgeway* v. *City of Escanaba* (1908), 154 Mich 68; *Northrup* v. *City of Jackson* (1935), 273 Mich 20; *Rottschafer* v. *City of East Grand Rapids* (1955), 342 Mich 43; *Boike* v. *City of Flint* (1965), 374 Mich 462; *Kowalczyk* v. *Bailey* (1967), 379 Mich 568; *Meredith* v. *City of Melvindale* (1969), 381 Mich 572.

11 The plaintiff testified that a similar accident occurred two to three weeks before his injury occurred.

pliance with the 60-day notice provision. Although the majority opinion attempted to limit its holding to the facts in that specific case,[12] their underlying intention to protect the right of plaintiff to process his claim resounds throughout the decision.

As was noted earlier, the rights of prisoners are not synonymous with the rights of free members of society. The scope of those rights varies from jurisdiction to jurisdiction.[13] Michigan has not spoken clearly on the rights of prisoners to collect damages for work-related injuries.[14] Whether a prisoner can initiate civil litigation, while in prison, to

[12] In *Grubaugh* v. *City of St. Johns* (1970), 384 Mich 165, the plaintiff, a 19-year-old minor, was injured when the car in which he was a passenger hit a chuckhole, went out of control and struck a tree. Suit was brought under MCLA § 691.1401 (Stat Ann 1969 Rev § 3.996[101]), claiming that a defect in the highway was the proximate cause of the injury. Plaintiff did not file a verified notice with the highway department within 60 days as was required as a condition precedent to recovery under the statute cited above. The majority of the Supreme Court held that the plaintiff's cause of action was entitled to protection from arbitrary interference under the due process clause.

[13] Most jurisdictions insure a prisoner's rights to defend himself and process claims directly related to his treatment by prison officials. However, those same jurisdictions limit his other civil rights. Prisoners do not have an unlimited right to correspond by mail; see: *Commonwealth* v. *Goodwin* (1898), 186 Pa 218 (40 A 412); *State* v. *Booker* (1910), 68 W Va 8 (69 SE 295); *Stroud* v. *United States* (1919), 251 US 15 (40 S Ct 50, 64 L Ed 103); *In re Bull* (D Nev 1954), 123 F Supp 389. The right of prisoners to practice their religion is likewise limited; *Sewell* v. *Pegelow* (CA 4, 1961), 291 F2d 196; *Cooper* v. *Pate* (1964), 378 US 546 (84 S Ct 1733, 12 L Ed 2d 1030). For brutality by prison officials, see: *United States* v. *Jones* (CA 5, 1953) 207 F2d 785; *United States* v. *Jackson* (CA 8, 1956), 235 F2d 925. Suits under color of civil right violations, see: 42 USCA § 1983; *Gordon* v. *Garrison* (ED Ill, 1948), 77 F Supp 477; *Stiltner* v. *Rhay* (CA 9, 1963), 322 F2d 314; *Dixon* v. *Duncan* (ED Va, 1963), 218 F Supp 157. Courts are generally reluctant to interfere with prison conduct and discipline. See also: Emerson, Haker and Dorsen, *Political and Civil Rights in U. S.*, 2 Vols (1967 ed).

[14] See *Orcutt* v. *Corrections Department* (1961), 362 Mich 465; OAG 1913, p 216 (February 5, 1913); OAG 1928–1930, p 135 (October 30, 1928); OAG 1957–1958, No 3160, p 1 (January 6, 1958), all of which are indicia of the way the state feels about inmates filing suits against the State of Michigan.

recover for such injuries is questionable.[15] By his incarceration, plaintiff suffered some legal disability which was not fully removed until he was released from the Detroit House of Correction.

Thus, plaintiff in the case now before us was incapacitated at the time of his injury. However, unlike Bruce Grubaugh, plaintiff here suffered under a legal, not physical, disability. This legal incapacity to sue the state while incarcerated created a disability analogous to that which prevented Grubaugh from timely filing his claim. Fundamental justice should not, under the circumstances of this case, demand strict compliance with that requisite notice provision.[16]

Further, we regard it as inequitable that the state should be permitted to imprison the plaintiff, instruct him to work at a knowingly defective machine, and then be able to escape liability for the ensuing injury by invoking their defense of statutory immunity.[17]

---

[15] *Hill* v. *Gentry* (WD Mo 1960), 182 F Supp 500; *Courtney* v. *Bishop* (CA 8, 1969), 409 F2d 1185; *In re Harrell* (1970), 87 Cal Rptr 504 (470 P2d 640); *Todzia* v. *State* (1967), 53 Misc 2d 200 (278 NYS2d 291); *O'Brien* v. *McGinnis* (1970), 311 NYS2d 553; *Hammett* v. *San Ore Construction Company* (1965), 195 Kan 122 (402 P2d 820).

[16] Similar sentiments have been expressed by other jurisdictions: *McCorkell* v. *City of Northfield* (1963), 266 Minn 267 (123 NW2d 367); *Reierson* v. *City of Minneapolis* (1962), 264. Minn 153 (118 NW2d 223). Some courts, including Michigan, have held that the state is held to be estopped from raising the notice requirement when they created the hazardous condition which caused the plaintiff's injury: *City of Yuma* v. *Evans* (1959), 85 Ariz 229 (336 P2d 135); *City of Louisville* v. *Louisville Seed Company* (Ky, 1968) 433 SW2d 638; *State* v. *Town of Tavares* (Fla, 1957), 96 So 2d 135; *Roberts* v. *City of Sterlıng* (1959), 22 Ill App 2d 337 (161 NE2d 138); *Shaw* v. *Village of Hempstead* (1958), 177 NYS2d 744. Michigan cases are: *Nevala* v. *City of Ironwood* (1925), 232 Mich 316; *Knapp* v. *City of Detroit* (1940), 295 Mich 311. Waiver of notice must be an affirmative act; compare: *Murphy* v. *City of Detroit* (1966), 2 Mich App 473.

[17] However, states which have found that the prison shop was engaged in a proprietary activity, and thus competed with private businesses, were not immune from suit. *Heitman* v. *City of Lake City* (1947), 225 Minn 117 (30 NW2d 18); Michigan is in accord

The state legislature enacted a statute which requires all employers to establish and maintain conditions of work which are reasonably safe and healthful for their employees.[18] Although the prison-inmate relationship is not an employer-employee arrangement within the contemplation of the labor standards act,[19] we can find no compelling reason

---

with this: *Downes v. Harper Hospital* (1894), 101 Mich 555; *Vannoy v. City of Warren* (1968), 15 Mich App 158; *Carlisi v. City of Marysville* (1964), 373 Mich 198.

The record now before us is unclear whether the work being done in the shop where plaintiff was injured was a proprietary activity—benches for public parks were made there. The state could be found liable for the plaintiff's injury had this activity been adjudged a proprietary function. Statutory immunity could not be raised as a defense in such a case.

[18] MCLA § 408.852 (Stat Ann 1948 Rev § 17.49[2]).

[19] The Federal government permits prisoners who are injured on the job in prison shops to file claims against the government, 18 USCA § 4126. Claims may only be filed while the prisoner is still in jail; he may not either sue for the injury in tort or file a claim against the fund once he has been released. The fund does not cover injuries sustained by attacks by either prison guards or other inmates. See: *Cole v. United States* (1965), 249 F Supp 7; *Granade v. United States* (CA 2, 1966), 356 F2d 837; *United States v. Muniz* (1963), 374 US 150 (83 S Ct 1850, 10 L Ed 2d 805); *United States v. Demko* (1966), 385 US 149 (87 S Ct 382, 17 L Ed 2d 258).

Some states have amended their workman compensation acts to include recovery by prisoners who are injured in job-related activities: North Carolina, PA 1929, Ch 120, § 14 Rev 1941; Maryland, PA 1939, art 101, § 47; Wisconsin, PA 1951, Ch 539. Arizona has allowed recovery to prisoners under Workman's Compensation by judicial decree: *Watson v. Industrial Commission* (1966), 3 Ariz App 32 (411 P2d 455).

Michigan has not decided the question directly. A reading of the available state rulings would seem to indicate that recovery would not now be available under the Workmen's Compensation Act, although at first blush that may appear to be the most logical source for recovery. See : OAG Opinions, fn 14, *supra*. In *Cadeau v. Boys' Vocational School* (1960), 359 Mich 598, the Supreme Court refused to permit the plaintiff, an inmate of the boys' vocational home, to recover under the Workmen's Compensation Act for an injury sustained in the school shop. The Court reasoned that the home was engaged in training the plaintiff in a skill and further, the relationship between plaintiff and the school was not an employer-employee arrangement, there being no contract of employment. However, as *dictum*, the Court recognized and indorsed a line of New York cases which allowed prisoners to recover for injuries incurred while working in prison shops. See Justice EDWARD's dissent in *Richards v. Birmingham School District* (1957), 348 Mich 490, 517 *et seq.*, and *Viaene v. Mikel* (1957), 349 Mich 533.

why the state should not be required to meet the same safety standards it has enacted for private industry.[20] The trial court, in rejecting the defendant's motion for summary judgment, held "that a person in custody in any state institution has a right to safety in his person". We do not go so far as to decide the extent and scope of the safety owed a prisoner. Rather our holding is limited to the facts now before us. The judgment of the trial court is affirmed. No costs, this being a public question.

All concurred.

---

We cite with enthusiasm the humane reasoning proffered in 1A Larson, *Workman's Compensation Law*, § 47.31, pp 692, 693:

"Convicts and prisoners have usually been denied compensation for injuries sustained in connection with work done within the prison, even when some kind of reward attended their exertions. The reason given is that such a convict cannot and does not make a true contract of hire with the authorities by whom he is confined. The inducements which might be held out to him, in the form of extra food or even money, are in no sense consideration for an enforceable contract of hire.

"Although this seems to be a correct application of any statute requiring a 'contract of hire', the result may in some circumstances be out of tune with the conditions of modern society. It is well known that many prisons nowadays operate elaborate factories, making twine, license plates, clothing, furniture and other things. Prisoners also are lent to highway departments for road work in some states. All the external features and all the risks of ordinary employment are present. However little value one may assign to the rights of a prisoner during his confinement, one should never forget that, in most instances, he will not always be a prisoner, and the permanent partial or total disability which he acquires in prison will create the same social problem after he returns to civil life as it would if the injury occurred while he was free. The unique problem of prisoners calls for careful legislative amendment of compensation acts, adapting their coverage to appropriate kinds of prison employment and disability." (Citations omitted.)

We think the legislature of this state ought to address itself to this problem.

[20] This theory has been the basis of two New York decisions: *Oliver* v. *State* (1959), 17 Misc 2d 1018 (186 NYS2d 151); *Callahan* v. *State* (1963), 19 AD2d 437 (243 NYS2d 881).