COMMON COUNCIL OF THE CITY OF DETROIT v. ENGEL.

1. CONSTITUTIONAL LAW—LOCAL ACTS—DETROIT LIBRARY BONDS —VALIDITY.

Act No. 323, Local Acts 1915, entitled "An act to authorize the common council of the city of Detroit to borrow money for the purpose of completing the erection and equipping the new main library building in the city of Detroit," and containing provision for submitting same to the electors of the city of Detroit, *held*, to be a local act.

2. SAME—GENERAL LEGISLATION—LOCAL ACTS — DETROIT LIBRARY BONDS—VALIDITY.

Said act being on the border line which divides general from special legislation, and it being within the contemplation of the framers of the Constitution that situations might arise where local legislation might be necessary, and since all the material requirements of the act itself have been met by the electors at a general election, by the common council, and by the board of estimates, *held*, not to be in contravention of section 30, Art. 5, Const. 1909. OSTRANDER, C. J., and FELLOWS and STONE, JJ., dissenting.

Certiorari to Wayne; Mandell, Williams, and Gilday, JJ. Submitted June 11, 1918. (Calendar No. 28,408.) Decided July 18, 1918.

Mandamus by the common council of the city of Detroit to compel George Engel, city controller, to prepare, countersign and transmit certain library bonds to the city treasurer in compliance with Act No. 323, Local Acts 1915. From an order granting the writ, defendant brings certiorari. Affirmed.

*Divie B. Duffield* and *Edmund Atkinson*, for plaintiff.

*Donnelly, Hally, Lyster & Munro* and *Walter C. McNiel*, for defendant.

MOORE, J. This is certiorari to review a mandamus proceeding in the circuit court for Wayne county in which the controller of the city of Detroit was ordered to issue library bonds to the amount of $750,000. It is claimed the bonds are illegal and should not be issued. The argument against their validity is summarized by counsel in the brief as follows:

"(1) That the Detroit library commission is a municipal corporation separate and distinct from said school district of Detroit and from the said city of Detroit.

202—Mich.—35.

"(2) That as compared with said city of Detroit, a full-fledged municipal corporation, said Detroit library commission is but a *quasi* municipal corporation.

"(3) That the boundaries of said Detroit library commission are the boundaries of said commission at the time of its incorporation, *i. e.*, the boundaries of said school district of Detroit and of said city of Detroit as they existed on March 29, 1901.

"(4) That the boundaries of said library commission have never been extended by legislative act.

"(5) That any act of the legislature extending the boundaries of said full-fledged municipal corporation of Detroit did not or could not automatically extend the boundaries of said *quasi* municipal corporation, the Detroit library commission, especially when neither of the separate acts incorporating said two municipal corporations so provided.

"(6) That since said city of Detroit is incorporated for city and full-fledged municipal purposes only, and since it has become subject to the provisions of said Act No. 279, Pub. Acts 1909, it can legislate only for city and full-fledged municipal purposes. Consequently any extension of boundaries by said city under said Act No. 279 affects the boundaries of said city only and does not and cannot affect the boundaries of said school district of Detroit or said Detroit library commission.

"(7) That bonds issued for library purposes are not bonds issued for full-fledged municipal purposes; and inasmuch as Detroit can levy and collect taxes for only city and full-fledged municipal purposes, it cannot levy and collect taxes to pay the principal and interest of bonds issued, not for city and full-fledged municipal purposes, but for library purposes.

"(8) That said Act No. 323 is unconstitutional under the provisions of section 30 of article 5 of said new Constitution because it is a special act and a general act might have been made applicable.

"(10) That said Local Act No. 323 is not effective in said Detroit library commission because said act was not properly and legally submitted to the voters of said Detroit library commission, the district to be affected by said Local Act No. 323, as required by the second and last provision of section 30 of article 5 of the Constitution.

"(11) That the act is an act entitled in part, 'An act to authorize the common council of the city of Detroit to borrow money.' Said act is therefore unconstitutional under sections 20 and 21 of article 8 of said Constitution, which prohibit the passage of special acts granting power to cities. The balance of said title reads as follows: '—for the purpose of completing the erection of and equipping the new main library building in the city of Detroit.'

"The purpose of said Act No. 323 is not a city or full-fledged municipal purpose and therefore said act fails under the provision of said section 21 of the Constitution."

We shall not undertake to deal with each of these objections in detail but before considering any of them will refer to what is shown by the record.

The Detroit library commission now in charge of library matters in the city of Detroit, was, previous to 1901, an adjunct of the board of education of the city of Detroit. It is still associated with it to the extent that its membership must be chosen by this board.

At its session in 1901, the legislature passed an act entitled:

"An act to incorporate the Detroit library commission, and to provide means for acquiring land and the erection of a public library building or buildings thereon, and the maintenance of the same." Act No. 359, Local Acts 1901.

By the provisions of this legislation the money of this corporation, aside from that received from fines, comes from the common council and the board of estimates of the city of Detroit, and it is raised by taxation upon the taxable property of the city. Later proceedings were begun to build a library building. Part of the site was acquired by purchase and the balance of it by condemnation proceedings. The original act as amended authorized the issue of a million dollars

worth of bonds. After the building was under way, it was discovered that the million dollars would not be sufficient to complete the building and equip it, and in 1915 the legislature passed Local Act No. 323, entitled:

"An act to authorize the common council of the city of Detroit to borrow money for the purpose of completing the erection and equipping the new main library building in the city of Detroit."

We quote portions of the act as follows:

"SECTION 1. The common council of the city of Detroit is hereby authorized to borrow for the purpose of completing the erection of and equipping the new main library building in the city of Detroit a sum of money not to exceed the sum of seven hundred fifty thousand dollars on the faith and credit of said city, and upon the best terms that can be made, and to issue bonds of said city to an amount not exceeding said sum, pledging the faith and credit of said city for the payment of the principal and interest, but said bonds shall not be negotiated at less than their par value. Said bonds shall be denominated 'Public library bonds of the city of Detroit.' · * * * No bonds shall be issued under this act until the issue of the same shall have been authorized and approved by the board of estimates of the city of Detroit.

"SEC. 2. * * * The principal realized from the issue and sale of said bonds shall be deposited in the city treasury to the credit of the public library fund for the purposes hereinbefore mentioned, and shall be applied exclusively to the purpose of completing the erection and equipping the new main library building in the city of Detroit. * * *

"SEC. 3. This act shall not take effect until a majority of the qualified electors of the city of Detroit voting on the question of the approval of this act, at any general or special election to be held in said city, shall so determine, and the common council of said city is hereby authorized and required to give notice of submitting the question of the approval of this act to the qualified electors of said city, by giving due notice thereof." * * *

Detailed instructions are given in the act of the manner of conducting the election and making a canvass of the votes and issuing a certificate of the result.

On April 16, 1918, a certificate was duly issued from which we quote:   .

"Certificate of Board of Canvassers.

"This is to certify that at a general election held in the city of Detroit, Michigan, November 7th, 1916, there was submitted to the qualified electors of said city the question of the approval of an act entitled 'An act to authorize the common council of the city of Detroit to borrow money for the purpose of completing the erection of and equipping the new main library building in the city of Detroit,' approved May 18th, 1915, being Act No. 323 of the Local Acts of the legislature of the State of Michigan, passed at the regular session of 1915, at which election a majority of the qualified electors of said city voting on said question determined that said act should take effect.
\* \* \*

"That the election was conducted and the votes canvassed and returns made in all respects as the aforesaid election held in said city is by law required to be conducted and immediately upon the conclusion of such canvass the board of canvassers made and signed certificates showing the whole number of votes cast upon said proposition and the number for and against the same, respectively; that said board of canvassers endorsed upon the certificates and declared in writing the result of said election; that such certificate and declaration were then filed with the city clerk of said city and entered and attached upon the records of said city and a copy of said certificate and declaration, certified to by said city clerk, was filed with the controller of said city; that the whole number of votes cast upon said proposition was 68,502 of which 52,714 were for the proposition and 15,788 against."

The common council and the board of estimates acted as provided in the act.

The most serious argument against issuing the bonds is stated in one of the briefs as follows:

"1. The act of 1915, although submitted to the electors, is unconstitutional because it does not comply with section 30, article 5, of the Constitution of 1909, which reads as follows:

" 'The legislature shall pass no local or special act in any case where a general act can be made applicable,' * * *

which question shall be a judicial one.

"2. The act of 1915 is unconstitutional because it is in contravention of section 1, article 12, of the Constitution of 1909, which reads:

" 'Corporations may be formed under general laws but shall not be created, nor shall any rights, privileges or franchises be conferred upon them, by special act of the legislature.' "

It is argued with much emphasis that the act is a local one, when a general act was applicable, and therefore void.

Article 5 of the Constitution is entitled "Legislative Department." Section 30 of article 5 reads:

"The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

Section 38 of the same article reads:

"Any bill passed by the legislature and approved by the governor, except appropriation bills, may be referred by the legislature to the qualified electors; and no bill so referred shall become a law unless approved by a majority of the electors voting thereon."

An interpretation was put upon the meaning of these sections by the official address issued when the Constitution was submitted to the electors, reading in part as follows:

"The legislature is inhibited from passing any local or special act in any case where a general act can be made applicable, and then no local or special act shall

take effect until approved by a majority of the electors voting thereon in the district to be affected. This is an entirely new and very important provision. It is intended to eliminate the vast volume of local legislation which has burdened the legislature in recent years and in many instances brought discredit upon it."

We may now approach the question, Is Act No. 323 a local act? As we have seen, Act No. 359 of 1901 providing means for acquiring a site and erecting a library building purported to be a local act. The act now under consideration purports to be a local act. It is found in the volume of Local Acts. The proceeds arising from the sale of the bonds are to be deposited in the city treasury of Detroit. The act itself before it can become valid must have the approval of a majority of the electors of the city of Detroit voting in relation thereto before it can become a valid act. We think it must be said the act is local. See the opinion of Justice STEERE handed down at this term in *Common Council of Detroit* v. *Engel, ante,* 536, involving the legality of the issue of school bonds.

Regarding the act, then, as local legislation, can it be said that it is unconstitutional because a general law might have been passed that would be applicable? We have already seen that a site for a library building has been acquired upon which there is an unfinished library building which it is estimated will require an expenditure of approximately $750,000 to finish and equip. Our attention has not been called to a like situation anywhere in the State and it is not likely to arise again in Detroit. The fact that eminent counsel are divided upon the question of whether a general law could be framed that would be applicable to the situation indicates that the legislation is on the border line which divides general from special legislation. We think it is not going far afield to say that the

framers of the Constitution were aware that such situations might arise. It is our duty, of course, to construe the provisions of the Constitution so as to give them all effect if possible. We think it not a strained construction to say that, if the legislature was in doubt as to whether a given law would come under the head of general legislation or would be special, if in the act itself there was a referendum to the electors of the district to be affected, it would be valid legislation when approved by the electors. Treating, then, the legislation as special or local, as all the material requirements of the act itself have been met by the electors at a general election, by the common council, and by the board of estimates, it should be said of the library bonds that they are valid and the judgment of the circuit court is affirmed, but without costs to either party.

BIRD, STEERE, BROOKE, and KUHN, JJ., concurred with MOORE, J.

FELLOWS, J. (*dissenting*). "The legislature shall pass no local or special act" without a referendum; nor shall it pass such act with a referendum "in any case where a general act can be made applicable." Section 30, article 5, Constitution. It is further provided in this section of the Constitution that "whether a general act can be made applicable shall be a judicial question." I agree with Mr. Justice MOORE that the act under consideration is a local act, but I do not agree with him that a general act cannot be made applicable. I discover no obstacle to the enactment of a law by the legislature authorizing *all* cities of the State to issue bonds for library purposes, within constitutional limits, and fixing the maximum rate of interest thereon. For 41 years we have had a general act authorizing our smaller cities, villages and

townships, to maintain public libraries and providing for their management and the levy and collection of taxes for their upkeep. Act No. 164, Pub. Acts 1877 (1 Comp. Laws 1915, § 3431 *et seq.*). I am unable to discover that the power of the legislature to pass this act has ever been questioned. Nor am I able to discover any reason which would forbid the legislature, by an amendment to this act, extending its scope to all cities; or, as stated, by an independent general act, providing for the issuance of bonds for library purposes by all cities. Nor do I discover any prohibition against classifying the cities of the State, within constitutional limitations, in regard to this subject-matter. By the Constitution itself the legislature is directed to establish libraries in each township and city. Section 14, Art. 11, Constitution of Michigan. This does not mean one city, but *all* cities. The subject of libraries is of general interest, and general legislation may be enacted applicable to the subject. If a municipality may so involve its affairs as to have its condition differ from other cities of the State, and for that reason successfully appeal for local and special legislation, then the constitutional provision here under consideration is meaningless, and the vice of special legislation is still with us. I think the legislation under consideration is invalid and that the judgment should be reversed.

OSTRANDER, C. J., and STONE, J., concurred with FELLOWS, J.