HOLLAND MOTOR EXPRESS, INC v MICHIGAN EMPLOYMENT
SECURITY COMMISSION

1. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—IN-
TENT.

   The Employment Security Act was intended primarily for benefit
   of those who, capable of working, are prevented from doing so
   other than by the results of their own acts (MCLA 421.2).

2. UNEMPLOYMENT COMPENSATION—LOCKOUT—RATIONAL CLASSIFICA-
TION.

   The classification of allowing benefits to persons who are unem-
   ployed, not because of their own acts, but because of a lockout,
   has a rational and justifiable relation to the purpose of the
   Employment Security Act (MCLA 421.2, 421.29[8]).

3. UNEMPLOYMENT COMPENSATION—LOCKOUT—CONSTITUTIONALITY.

   The Employment Security Act provision permitting benefits to
   persons who are unemployed because of an employer's lockout
   is constitutional and does not deny employers the equal protec-
   tion of the laws where the lockout exception does not create an
   irrational classification (MCLA 421.29[8]).

4. UNEMPLOYMENT COMPENSATION—LABOR DISPUTE.

   Payment of unemployment compensation by the state to those
   who are unemployed because of a labor dispute in which they
   are. not participating does not result in the employer being
   penalized nor does it have anything to do with the merits of the
   labor dispute.

5. UNEMPLOYMENT COMPENSATION—FOREIGN LABOR DISPUTE—LOCK-
OUT.

   Unemployment benefits paid to Michigan claimants who were
   locked out because of a labor dispute in Chicago did not

---

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 48 Am Jur, Social Security, Unemployment Insurance and
Retirement Funds § 36.
Construction and application of provisions of unemployment com-
pensation or social security acts regarding disqualification for
benefits because of labor disputes or strikes. 28 ALR2d 287.

subsidize in any way that labor dispute which culminated in the lockouts; the dispute was between the Chicago employers and the local unions there, not between claimants' union locals and the Michigan employers.

6. UNEMPLOYMENT COMPENSATION—LOCKOUTS—NLRA—CONSTITU-
TIONAL LAW.

Employers' lockouts are permitted but not protected under the National Labor Relations Act; therefore the Michigan Employment Security Act which permits unemployment benefits to be paid to persons who are unemployed because of lockouts is not inconsistent with the provisions and legislative intent of the NLRA and does not violate the supremacy clause of the Federal Constitution.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 March 15, 1972, at Detroit. (Docket Nos. 10863, 10864, 10865.) Decided July 24, 1972.

Complaints by Holland Motor Express, Inc., Great Lakes Express Company, and Saginaw Transfer Co., Inc., against the Michigan Employment Security Commission, Arthur Postmus, Junior L. DeJonge, Andrew J. Grotenhuis, Gene Davis, Norman L. Jelsma, Roy Hines, Joseph Szabo, William Perfitt, and Glen D. Lavender to have § 28(9) of the Michigan Employment Security Act declared unconstitutional. Judgment for defendants. Plaintiffs appeal. Affirmed.

*John W. Ester* and *R. Ian Hunter (Matheson, Bieneman, Veale & Parr,* of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for defendant commission.

Before: R. B. BURNS, P. J., and HOLBROOK and QUINN, JJ.

HOLBROOK, J. Appellants, at all material times, were motor common carriers engaged in the transportation of commodities between points in Michigan and other states, including Illinois. Each appellant had terminal facilities in Chicago and at various points in Michigan. Appellees (hereinafter called claimants) were employees of appellants (hereinafter called employers) at their various Michigan terminals.

On March 31, 1967, various collective bargaining agreements governing the terms and conditions of the employment of the claimants with the employers expired. Negotiations between the employers represented by Trucking Employers, Inc. (TEI) and the unions of the claimants represented by International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (IBT) for new contracts began in March and continued into April, 1967.

The negotiations were unsuccessful in arriving at a new agreement. As a result, the local unions involved began selective strikes and picketing. To counter this, TEI, as a defensive measure, ordered its members to lock out their employees in Michigan. Claimants were locked out from April 10 through April 15, 1967. Their claims for unemployment benefits for this period were denied by the Michigan Employment Security Commission (MESC), the referee, and the appeal board. No appeal from the denial of their claims for this week was taken by the claimants and, therefore, their entitlement to benefits for the week ending April 15, 1967, is not at issue here.

The employers were also parties to separate bargaining agreements with three union locals in Chicago who represented their Chicago-based employees. The contracts with these locals also ex-

pired on March 31, 1967. The Central Motor Freight Association (CMFA) represented the employers in these negotiations. Two of the Chicago union locals were associated with IBT; the other local was an independent union. The negotiations between CMFA and the three Chicago locals did not go as well as the negotiations in the cases involved in Michigan. Therefore, when the claimants in Michigan were back to work on April 15, 1967, the locals in Chicago had not yet reached a settlement with the employers. As a result, selective strike activity was commenced by the Chicago locals. Thereafter, the CMFA instructed the employers to close all of their Chicago facilities which was done effective April 23, 1967.

Since much of the employers' business involved the transportation of goods between Chicago and their Michigan terminals, there was insufficient work for all of the employers' Michigan-based employees as a result of the lockout in Chicago. Accordingly, the employers laid off some of their employees in Michigan, including claimants herein.

An agreement with the three Chicago locals was reached on May 5, 1967, and claimants thereafter were recalled to work. Claimants filed their claims for unemployment benefits with the commission for the period from April 23 to May 6, 1967.

The commission, at the administrative level, determined and redetermined that the claimants were not entitled to benefits for these two weeks because they were involved in a labor dispute within the meaning of § 29(8) of the Michigan Employment Security Act.[1]

The referees who heard the appeals of the claimants reversed the commission. They held that the

---

[1] MCLA 421.29(8); MSA 17.531(8).

claimants were unemployed during the two weeks in question because of a lockout in another establishment of their employer and, were therefore, not subject to disqualification under the provisions of § 29(8). The appeal board affirmed this determination. On appeal to the Ingham County Circuit Court the three cases were consolidated for hearing. The employers did not claim that the referees or the appeal board improperly interpreted and/or applied § 29(8). Instead, the employers alleged that § 29(8) on its face and applied to the facts in these cases violated their right to equal protection of the law and penalized them for exercising certain rights granted them under the National Labor Relations Act in violation of the supremacy clause of the United States Constitution. From an adverse judgment, the employers appeal.

## I.

Whether or not § 29(8) of the Michigan Employment Security Act (MESA) denied to the employers the equal protection of the law so as to be unconstitutional under both state and Federal law?

Section 29(8) of the MESA provides as follows:

"An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shut-down or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute *(other than a lockout)* in active progress, or to shut-down or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be

disqualified under this subsection 29(8) if he is not directly involved in such dispute." (Emphasis supplied.)

The essence of the employers' contentions are as follows: Both a strike and a lockout are recognized as legitimate economic weapons under proper circumstances in a labor dispute. Under § 29(8), claimants would have been disqualified for unemployment benefits for the period involved if the layoff would have been the result of a strike instead of a lockout. Because both a strike and a lockout are legitimate economic weapons, there is no rational basis for distinguishing between them with respect to disqualification for unemployment benefits. Because there is no basis for distinguishing between them, when the act excepted lockouts as it pertains to its effects on benefits, it is unconstitutional in that it is an arbitrary and discriminatory classification that denies the employers equal protection of the law. It is the employers' claim that they are therefore entitled to have the claimants disqualified on the same basis as if the strike had been a cause of the layoff involved.

The Michigan Constitution of 1963, art 1, §§ 1, 2 affords the same rights of equal protection as its counterpart in the Constitution of the United States. *Fox v Employment Security Commission,* 379 Mich 579 (1967). The use of a lockout and a strike under proper circumstances is lawful. *National Labor Relations Board v Truck Drivers Local Union No 449,* 353 US 87; 77 S Ct 643; 1 L Ed 2d 676 (1957). In *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78–79; 31 S Ct 337, 340; 55 L Ed 369, 377 (1911), the United States Supreme Court enumerated the following rules by which it tests the contention that the equal protection of the law has been denied:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

It is clear that a statute passed by the Legislature will be presumed to be valid unless the contrary clearly appears. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution that a court will refuse to sustain its validity. *Cady v Detroit*, 289 Mich 499 (1939).

In *In Re Phillips*, 305 Mich 636, 641–642 (1943), it was said:

" 'Legislation is not unconstitutional because it is legislation of a particular kind and character, or because it benefits a particular class. If the object and purpose of the legislation is legitimate and within the terms of the Constitution, the mere fact that there is a classification, so long as the law operates equally upon those within the particular class, does not render it unconstitutional.

.  *  *  *

" '[I]t is only in cases where it is manifest upon the face of a statute that a classification therein is based

upon no reason, but is purely an arbitrary act, that courts may and must, for that reason, declare unconstitutional'.

\* \* \*

"The burden of showing that the challenged legislation creates an irrational classification is on the party assailing the statute."

In *Fox, supra,* p 588, it was stated:

"In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in which it is found."

The purpose behind the act here involved is found in MCLA 421.2; MSA 17.502:

"Declaration of policy. The legislature acting in the exercise of the police power of the state declares that the public policy of the state is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state."

Thus, it is clear that the act was intended primarily for the benefit of those involuntarily unemployed, in other words, those who, capable of working, are prevented from doing so other than by the results of their own acts. *I M Dach Underwear Co v Employment Security Commission,* 347 Mich 465 (1956); *General Motors Corp v Employment Security Commission,* 20 Mich App 379 (1969).

It is clear that in the instant case there is a rational and justifiable relation between the classification of allowing benefits when an individual is out of work due to a lockout in the present circumstances and the purpose of the statute. Claimants herein were capable of working and were prevented from doing so by the lockout involved, not their own acts.

The classification of qualification for benefits when unemployment is the result of a lockout as opposed to when the unemployment is the result of a strike is also grounded on a substantial rational and justifiable basis. The trial court pointed out in its decision essentially what the Legislature said in the act:

"If you are unemployed by reason of strike activity on your part, or on the part of those closely connected with you, you will not be entitled to unemployment benefits. If on the other hand you are unemployed by reason of the act of your employer in locking you out, you will be entitled to benefits."

This is entirely consistent with the purpose behind the act. If the employer locks an individual out because of a labor dispute in another establishment, the unemployment involved is involuntary and the individual is entitled to benefits. On the other hand, if the unemployment is the result of a strike on the part of those closely connected with

an individual, the unemployment tends to be voluntary and the individual is not entitled to benefits. As such, the Legislature was making a practical accommodation on a purely rational basis. *Dandridge v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

It is clear that the employers have failed to meet their burden of establishing that the challenged legislation created an irrational classification so as to overcome the presumption of the validity of the constitutionality of the statute. We hold that § 29(8) of the MESA did not deny the employers the equal protection of the law, and it is therefore constitutional.

## II.

Whether the provisions of § 29(8) of the MESA are inconsistent with the provisions and legislative intent of the National Labor Relations Act (NLRA), as amended, and thus in violation of the supremacy clause of the United States Constitution?

The employers' contentions are as follows: The provisions of § 29(8) are inconsistent with the provisions and legislative intent of the NLRA, as amended, and thus unconstitutional as violative of the supremacy clause of the United States Constitution. They submit that the unemployment benefits paid to the claimants are charged to the employers' respective balances in the employers' accounts in the unemployment compensation fund. These payments to the claimants result in a direct financial detriment to the employers. As such, these payments have the effect of subsidizing the labor dispute in Chicago. This result tends to frustrate the employers' right to engage in a lockout. Because such a lockout is permissible *and*

*protected* by the NLRA, the provisions of § 29(8) with the resulting impact of the payment of benefits upon the employers' contribution rates to the unemployment fund are inconsistent with the employers' lawful use of the lockout. The lockout exception to § 29(8) of the MESA acts as an obstacle to the accomplishment and execution of the amended NLRA in that it improperly subjects an employer to financial burdens at a time when it utilizes a federally protected economic weapon in the midst of collective bargaining. As such, the employers contend that the inconsistency between the Michigan statutory provisions and the Federal labor legislation is in violation of the supremacy clause of the United States Constitution in that it frustrates enforcement of the NLRA.

The employers' contention that the payment of unemployment benefits to the claimants results in a direct financial detriment to the employers, which, in effect, subsidizes the labor dispute in Chicago is without merit. In *National Labor Relations Board v Gullett Gin Co,* 340 US 361, 364; 71 S Ct 337; 95 L Ed 337 (1951), the United States Supreme Court made it clear that the employers do not directly pay unemployment benefits to claimants but rather such payments are made by the state:

"Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state."

Our Supreme Court in *Lawrence Baking Co v*

*Unemployment Compensation Commission,* 308 Mich 198, 214 (1944), also made it clear that the payment of unemployment compensation by the state does not result in a penalty to the employer nor does it have anything to do with the merits of a labor dispute:

"Plaintiff's argument is based upon the premise that the payment of compensation to employees on strike is a penalty upon the employer, because its rate of contribution to the unemployment fund will thereby be increased. The public purpose of the unemployment compensation law is to alleviate the distress of unemployment, and the payment of benefits is not conditioned upon the merits of the labor dispute causing unemployment. Likewise, the required contribution of the employer to the unemployment compensation fund is not determined upon the basis of the merits of the dispute. The increase in the amount of the employer's contribution to the fund because of its experience record of payments to employees is not in any sense a penalty. By the unemployment compensation act, the legislature provided a method of determining the employer's contribution to the compensation fund, and it did not see fit to base the amount of such contribution upon the merits of a labor dispute or upon the right or wrongdoing of the employer in connection with such dispute. Such legislative enactment is presumed to be constitutional unless the contrary clearly appears."

Furthermore, the lockouts involved occurred in Chicago, Illinois, whereas the unemployment benefits were paid by the MESC to Michigan employees. With respect to the claimants and their unions, there was no labor dispute in progress. The dispute and the consequential bargaining which culminated in the lockouts were between the employers and the Chicago local unions. As such, it cannot be said that the payment of benefits to Michigan employees by the Michigan Employment Security Commission in any way resulted in the subsidizing of the labor dispute in Chicago.

The employers' contention that a lockout is permissible *and protected* by the NLRA so that the resulting impact of the payment of benefits upon the employers' contribution rates to the unemployment compensation fund is inconsistent with the employers' lawful use of the lockout is equally without merit. The employers' cited cases of *NLRB v Truck Drivers Local Union No 449, supra,* and *NLRB v Brown,* 380 US 278; 85 S Ct 980; 13 L Ed 2d 839 (1965), merely held that a lockout was a legitimate economic weapon that may be used in labor disputes under proper circumstances. These cases did not hold nor did they in any way infer that lockouts are protected in addition to being permitted by the NLRA.

The employers have not cited any provisions of the NLRA that expressly indicate that a lockout is protected by that act. They also have not rendered any authority indicating that the Congress, in enacting the NLRA as amended, established a general policy or specific rules defining the NLRA's effect on such a state statute as § 29(8) or that the Congress in any way intended to strike down such a state statute that is designed to protect the health and safety of the public. *International Union, United Automobile Workers v Wisconsin Employment Relations Board,* 336 US 245; 69 S Ct 516; 93 L Ed 651 (1949); *Southern Pacific Co v Arizona,* 325 US 761; 65 S Ct 1515; 89 L Ed 1915 (1945).

In view of the aforesaid, it is evident that the presumption of constitutionality of § 29(8) has not been overcome. We hold that § 29(8) of the MESA is not inconsistent with the provisions and legislative intent of the NLRA, as amended, and is therefore not violative of the supremacy clause of the United States Constitution.

Affirmed. Costs to claimants.

All concurred.