PEOPLE v ANDREA

1. CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGISLATION—SEX CLASSIFICATION—DETROIT HOUSE OF CORRECTION.

Legislation which makes an unreasonable and arbitrary classification on the basis of sex violates the equal protection guarantee of the Federal and Michigan constitutions, but it does not necessarily follow that the statutes dealing with the Detroit House of Correction are unconstitutional on their face because they provide for incarceration of women prisoners at the Detroit House of Correction only (US Const, Am XIV; Const 1963, art 1, § 2).

2. PARDON AND PAROLE—GOOD-TIME CREDIT—FEMALE CONVICTS—EQUALITY.

Male and female convicts in state prisons must be treated equally with respect to good-time credits for early release and parole consideration (MCLA 791.204, 791.234, 791.262, 802.55).

3. PRISONS—DETROIT HOUSE OF CORRECTION—CONSTITUTIONAL LAW—STATUTES.

The Legislature has not unconstitutionally delegated the majority of the Detroit House of Correction's operational functions to the City of Detroit and has not improperly imposed the entire financial burden of maintaining the facility on the city in view of the substantial authority and control exercised by state penal authorities over the management and policies of the Detroit House of Correction and in light of the clear statutory scheme for spreading costs of operating the facility among city, county and state users (1861 PA 164; MCLA 791.262, 802.8a, 802.11, 802.14, 802.21, 802.181).

4. CONSTITUTIONAL LAW—STATUTES—SUPPLEMENTARY ACTS—OBJECT OF ACT—DETROIT HOUSE OF CORRECTION.

Supplementary acts are not considered amendatory legislation

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law §§ 335, 485–493.
[2] 59 Am Jur 2d, Pardon and Parole § 71.
[3] 60 Am Jur 2d, Penal and Correctional Institutions §§ 11, 12, 15.
[4] 60 Am Jur 2d, Penal and Correctional Institutions §§ 4, 5.

within the constitutional provision that no law shall be revised, altered or amended by reference to its title only; therefore, a contention that because the statute requiring female convicts to be committed to the Detroit House of Correction contains more than one subject and because the various subjects expressed in the statute's purview are not expressed in its title, it is unconstitutional, has no merit, since the statute has but one object, namely, to supplement an earlier act which is described fully by its title and the several provisions of the later act are germane to the earlier one (Const 1963, art 4, §§ 24–25; 1861 PA 164, 1867 PA 131).

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 February 12, 1973, at Detroit. (Docket No. 12285.) Decided July 23, 1973. Leave to appeal applied for.

Myra Andrea was convicted, on her plea of guilty, of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stewart Freeman* and *William J. Mullaney,* Assistants Attorney General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Edward R. Wilson,* Assistant Prosecuting Attorney, for the people.

*James R. Neuhard,* Acting State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. Defendant pled guilty to unarmed robbery in Wayne County Circuit Court on May 17, 1971, and was sentenced to prison for a term of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

3 to 15 years. She was placed in the custody of the Detroit House of Correction.

A claim of appeal was filed on July 17, 1971. On September 27, 1971, defendant filed a motion to remand for an evidentiary hearing on the question of whether her sentence constituted cruel and unusual punishment and a denial of equal protection of the law. The motion was granted October 11, 1971. On October 21, 1971, defendant filed in the sentencing court a motion to vacate her sentence. The prosecutor came to the Court of Appeals on November 11, 1971, and requested a rehearing of this Court's remand and a stay of the proceedings below. The stay was granted November 19, 1971. This Court requested that two issues be briefed: first, where was the proper forum for determining issues raised by defendant and second, what was the proper procedure for raising the issues, *i.e.,* whether the proper procedure was a motion to set aside the sentence, a motion for a new trial or a writ of habeas corpus. A rehearing on the motion to remand to the trial judge was granted and briefs filed, with the Attorney General responding on behalf of the people. The Attorney General's motion to set aside the order of remand was granted February 23, 1972. Subsequently, a motion to dismiss defendant's appeal was filed by the Attorney General on August 22, 1972, but it was denied September 15, 1972.

Ten issues are raised by defendant on her appeal, but we have cause to discuss only the last four issues raised. The first six issues[1] concern the

[1] The first six issues raised were:

"I. The people of the state of Michigan have deprived Myra Andrea of equal protection of the law by incarcerating her in the Detroit House of Correction.

"II. The conditions of confinement at the Detroit House of Correction deprived defendant of her rights as protected by the United States Constitution.

"III. The totality of the conditions of defendant's incarceration

quality of the living conditions in the Detroit House of Correction and the character of defendant's confinement, matters that we cannot adequately assess because a proper record has not been made. As to a determination of those issues, defendant may bring an original action in a proper court.

Issues VII through X are primarily legal ones concerned with the constitutionality of the statutes creating the Detroit House of Correction, and these are matters with which we can now deal as briefed on appeal. Our authority to review the legal question surrounding defendant's sentence is derived from our power to review sentences generally. See, *e.g., People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972); *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972).

Defendant frames issue VII as follows:

"Because the statutes establishing the Detroit House of Correction and mandating that females be incarcerated there, promulgate standards which irrationally and capriciously discriminate against women prisoners, defendant was denied the equal protection of the law when she was sent to DeHoCo, , and hence the statutes establishing DeHoCo and requiring that women be sent there are unconstitutional on their face."

Defendant contends that there is a Federal and

constitute cruel and unusual punishment in violation of the 8th and 14th Amendments to the United States Constitution.

"IV. The deprivation of defendant's constitutional rights by her sentence and by the conditions of incarceration require that this Court immediately resentence defendant to such punishment as will not deprive her of her constitutional rights.

"V. Defendant is deprived of 1st Amendment freedom by the conditions of incarceration at the Detroit House of Correction.

"VI. Defendant has been subject to a prison disciplinary process which does not comply with the due process standards of the 14th Amendment."

state constitutional and a Michigan case law basis for the proposition that legislation which irrationally discriminates against women is violative of equal protection guarantees. US Const, Am XIV; Const 1963, art 1, § 2. She concludes that the statutes[2] establishing the Detroit House of Correction discriminate against women prisoners who must be committed there because the statutory provisions governing good-time credit, parole and superintendent qualifications at DeHoCo differ substantially from statutory provisions on the same points for male prisoners in other state penal institutions. For purposes of our decision, it will be conceded that legislation which makes an unreasonable and arbitrary classification on the basis of sex violates the equal protection guarantee of the Federal constitution. See, *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971); *Frontiero v Richardson,* 411 US 677; 93 S Ct 1764; 36 L Ed 2d 583 (1973); *Brenden v Independent Sch Dist,* 477 F2d 1292 (CA 8, 1973). The Michigan equal protection guarantee would be similarly offended. *Holland Motor Express v MESC,* 42 Mich App 19, 24; 201 NW2d 308, 310 (1972). However, it does not necessarily follow from this rule that the statutes dealing with the Detroit House of Correction are unconstitutional on their face because they provide for incarceration of women prisoners at DeHoCo only.

Defendant contends that women prisoners can earn only three days per month deduction from their sentences for good behavior while in DeHoCo, pursuant to § 20 of the Detroit House of Correction Act, 1861 PA 164, MCLA 802.20; MSA

---

[2] Acts concerning the Detroit House of Correction referred to in defendant's brief are: 1861 PA 164, MCLA 802.1 *et seq.;* MSA 28.1811 *et seq.;* 1867 PA 131, MCLA 802.51 *et seq.;* MSA 28.1841 *et seq.* and 1869 PA 145, MCLA 802.101 *et seq.;* MSA 28.1861 *et seq.*

28.1829, while men in other state penal institutions earn five days credit for each month served during the first two years of incarceration and, thereafter, progressively greater credits for succeeding years of incarceration, pursuant to MCLA 800.33; MSA 28.1403. While arguably if such a contention were true, it might be a denial of equal protection to women prisoners, the applicable law is not in accord with defendant's argument. Equal treatment of all state prisoners (male or female) for good-time computations is mandated by § 4 of the act originally[3] establishing the Department of Corrections. MCLA 791.204; MSA 28.2274, gives the department jurisdiction over all state penal institutions and facilities, including DeHoCo , as was held in *Green v Corrections Dept,* 30 Mich App 648; 186 NW2d 792 (1971), *aff'd,* 386 Mich 459; 192 NW2d 491 (1971). *Green* held that the Department of Corrections may be held liable for damages for tortious injury sustained by a state-sentenced inmate of the Detroit House of Correction. *Green* based the state's liability on both MCLA 791.204; MSA 28.2274, cited above, and upon MCLA 791.262; MSA 28.2322. *Green* established beyond question that the Detroit House of Correction "is not a city prison facility", but rather that it is a "prison facility within this state * * * subject to the same standard of supervision and inspection by the Corrections Commission as is applicable to all other state prison facilities". 30 Mich App 648, 652, 653; 186 NW2d 792, 794, 795. On that point, the Supreme Court said in affirming:

"It is said finally that upheld liability of the state to

---

[3] The present Department of Corrections was established by a transfer under § 277 of the Executive Organization Act of 1965, MCLA 16.377; MSA 3.29(277).

plaintiff will 'lead to chaos insofar as fixing responsibility for management of Detroit House of Correction.' Our response is that the Legislature has created the Department of Corrections for the purpose of concentrating with that department the primary (but not exclusive of course) responsibility for the well-being as well as the disciplinary rehabilitation of state-sentenced prisoners, whenever such prisoners are held in any penal institution over which Corrections has jurisdiction and the power—whether exercised or not—to promulgate rules and standards relating thereto. No matter where Corrections may choose lawfully or need lawfully to incarcerate or permit incarceration of any such prisoner, its duty to him remains constant and may not be subjected to delegation; whether or not others are concurrently accountable for breach of the same or a corresponding legal duty." 386 Mich 465; 192 NW2d 494.

Equal treatment of male and female inmates of state penal institutions with respect to good-time computation is also mandated by 1867 PA 131, § 5; MCLA 802.55; MSA 28.1845, which provides:

"All laws now in force, applicable to persons confined in the state prison, shall be and are hereby made applicable to all persons who are, or hereafter shall be confined in said house of correction, who have been transferred to said house from the state prison, or who shall be sentenced to confinement in said house, on conviction of any offense punishable by confinement in the state prison."

OAG, 1925–1926, p 208 (March 6, 1926) ruled that good time for DeHoCo inmates could be computed only under 1861 PA 164, § 20, and that the statute quoted above did not alter the method of computing such credits. However, *People v Reese,* 363 Mich 329, 333; 109 NW2d 868, 871 (1961), overrules that opinion, holding that the phrase in 1867 PA 131, § 5: "All laws now in force", is to be

interpreted to mean "all laws now in force or hereinafter enacted". The prison code (1893 PA 118), of which MCLA 800.33; MSA 28.1403, is a part, was enacted after the first House of Correction Act (1861 PA 164). From a purely statutory standpoint, then, it is clear that male and female convicts in state prisons must be treated equally with respect to good-time credits for early release. Of course, defendant may be able to show that the law is not being followed, but no proof of that fact is demonstrated here.

Defendant further contends that women prisoners in DeHoCo are treated differently for parole consideration than are male prisoners in other state penal institutions. Her claim is premised on 1869 PA 145, § 5; MCLA 802.105; MSA 28.1865, which in clear context applies only to women inmates confined in DeHoCo "by virtue of the preceding section", which section has reference only to any "person more than 15 years of age who is a common prostitute" imprisoned in the Detroit House of Correction. MCLA 802.104; MSA 28.1864. We are not here called upon to consider the validity of those two sections. It is sufficient to point out that they do not govern parole procedures for women inmates generally in DeHoCo and that they do not support defendant's contention that, for purposes of parole consideration, women state inmates of DeHoCo are statutorily treated differently than male state prisoners. Moreover, we perceive a requirement that male and female state prisoners be treated equally for parole consideration in MCLA 791.234; MSA 28.2304, which subjects to the jurisdiction of the state parole board "*every* prisoner sentenced to an indeterminate sentence and confined in a state prison or reformatory". (Emphasis supplied.) Furthermore, we deem

our discussion above of MCLA 802.55; MSA 28.1845, with regard to the good-time rules similarly applicable to parole consideration here, *i.e.,* equal treatment for male and female prisoners for parole is mandated by that statute.

Finally, defendant contends that women state prisoners confined in DeHoCo are discriminated against because the superintendent of DeHoCo is not required to meet any of the qualifications that wardens of state prisons are required to meet under the provisions of MCLA 800.5, 800.9; MSA 28.1375, 28.1379. If those statutes ever established qualifications and responsibilities for state prison wardens different from the qualifications for the superintendent of DeHoCo, they no longer do. Both statutes were repealed by 1972 PA 179 and were not replaced.

The eighth issue on appeal is:

"Since the statutes requiring Detroit to establish DeHoCo and requiring Detroit to provide facilities for all women prisoners who are eligible to be sent to state prison are special and local legislation in violation of Const 1963, art 4, § 29, they are unconstitutional on their face."

Defendant specifically contends that the acts establishing the Detroit House of Correction, 1861 PA 164, and 1867 PA 131 (MCLA 802.51; MSA 28.1841), are violative of the above-cited constitutional provision, and that the general act which could be made applicable in place of them is 1911 PA 278, as amended by 1945 PA 16 (MCLA 802.201; MSA 28.1901), which permits cities over 100,000 in population at their discretion to maintain houses of correction. Defendant's argument ignores the ruling of *Green, supra,* which specifically identifies the Detroit House of Correction as

a state, not local, prison. Furthermore, the objective of Const 1963, art 4, § 29 (formerly Const 1908, art 5, § 30), is to "eliminate the vast volume of local legislation which has burdened the Legislature in recent years and in many instances brought discredit upon it". *Common Council of Detroit v Engel,* 202 Mich 544, 551; 168 NW 465, 466–467 (1918). Creation of the Detroit House of Correction for *state* prisoners hardly contravenes that objective.

The ninth issue on appeal is:

"The State Legislature unconstitutionally delegated power to the City of Detroit when it required the city council and its appointees to finance the jail and provide for the administration and maintenance of state prisoners."

The gist of defendant's contention is that the statutes concerning the Detroit House of Correction constitute an improper delegation of legislative authority to the City of Detroit, contrary to Const 1963, art 3, § 2, because the city allegedly has almost total control over the management and policies of the facility and because the city allegedly is solely responsible for the financing of the institution.

Our discussion of the applicable statutes during consideration of defendant's seventh issue shows clearly that her contention is untenable. Defendant says that, "the state department of corrections is permitted to inspect DeHoCo and to promulgate standards for it. MCLA 791.262; MSA 28.2322. This, however, is the extent of the state's involvement with DeHoCo." However, the statute cited by defendant charges the Department of Corrections, Bureau of Prisons, with the *duty,* not only to inspect the Detroit House of Correction, but also to

*supervise* it. On the basis of that statute, *inter alia,* this Court concluded in *Green, supra,* pp 652–653, that the Detroit House of Correction is a state penal institution subject to the management and supervision of the State Department of Corrections:

"In addition, the Corrections Commission is empowered to appoint a director, who is in turn empowered to make rules and regulations 'for the management and control of penal institutions * * * and prison labor and industry', MCLA 791.206; MSA 28.2276.

"MCLA 791.161; MSA 28.2322 provides in pertinent part that the Corrections Commission through its assistant director for penal institutions

" 'shall supervise and inspect local jails and houses of correction for the purpose of obtaining facts in any manner pertaining to the usefulness and proper management of said penal institutions and of promoting proper, efficient and humane administration thereof, and shall promulgate rules and standards with relation thereto.'

"Although the Detroit House of Correction is managed by a superintendent appointed by the City of Detroit, it, as a prison facility within this state, is subject to the same standard of supervision and inspection by the Corrections Commission as is applicable to all other state prison facilities. MCLA 802.1 *et seq;* MSA 28.1811 *et seq.*"

See also, similar language from the Supreme Court's affirmance of *Green, supra,* 386 Mich 459; 192 NW2d 491 (1971). In view of this authority, it cannot be said, as defendant contends, that the state has abdicated control of DeHoCo to the city. See, *Detroit v Water Commissioners,* 108 Mich 494; 66 NW 377 (1896); *Detroit v Laughna,* 34 Mich 403 (1876). The state's interest in DeHoCo and its control of DeHoCo management and policies is obvious and substantial in spite of the fact

that 1861 PA 164 gives the Detroit common council and its appointees power to exercise various responsibilities in the day-to-day management of the facility.

Defendant's assertions that the city, not the state, is required to meet the expenses of the Detroit House of Correction and that it is the city which has the ultimate responsibility for paying the upkeep of prisoners, including state prisoners like defendant, is not true. Although MCLA 802.14; MSA 28.1824, makes the maintenance expenses of the facility charges against the city, other statutes spread the cost of maintaining the facility among the state and counties using it. Thus, for example, MCLA 802.8a; MSA 28.1818(1), authorizes county boards of commissioners to contract with city officials for confinement of accused persons prior to trial or sentence. The section concludes with the provision that "the agreement shall provide that the county shall pay all reasonable expenses incurred by the city for such custodial incarceration". MCLA 802.11; MSA 28.1821, authorizes state penal authorities to contract with the city to lodge certain state prisoners, including women, at the Detroit facility. As originally enacted, the section provided for a weekly maintenance fee of no more than $1 to be paid by the state to the city. MCLA 802.181; MSA 28.1891, however, allows the city to demand payment for its expenses incurred in caring for state prisoners sent to the Detroit House of Correction by any Michigan court of competent jurisdiction. Similarly, MCLA 802.21; MSA 28.1830, authorizes the city and the County of Wayne to settle between themselves the city's charges for keeping Wayne County convicts at DeHoCo.

In view of the substantial authority and control

exercised by state penal authorities over the management and policies of the Detroit House of Correction and in light of the clear statutory scheme for spreading costs of operating the facility among city, county and state users, we find no validity in defendant's argument that the Legislature has unconstitutionally delegated the majority of DeHoCo's operational functions to the city or that the Legislature has improperly imposed the entire financial burden of maintaining the facility on the City of Detroit.

The final issue X raised by defendant on appeal is:

"Because the statute requiring defendant to be committed to the Detroit House of Correction contains more than one subject, and because the various subjects expressed in the statute's purview are not expressed in its title, the statute violates Const 1963, art 4, § 24."

The pertinent part of Const 1963, art 4, § 24 provides: "No law shall embrace more than one object, which shall be expressed in its title". Defendant contends that 1867 PA 131 on its face contravenes the above constitutional provision because it includes at least six diverse subjects that are not related and because those six subjects are not discussed in its title. We reject defendant's challenge to the title of 1867 PA 131. That act has but one object, namely, to supplement an earlier act which is described fully by its title. The object of the act, to supplement the earlier act, is clearly expressed in the title: "An act supplementary to an act entitled 'an act to establish the Detroit House of Correction, and authorize the confinement of convicted persons therein.'" Although Const 1963, art 4, § 25 provides that "[n]o law shall be revised, altered or amended by reference

to its title only", supplementary acts are not considered amendatory legislation within that constitutional provision. *Black v Powell,* 248 Mich 150; 226 NW 910 (1929); *Attorney General v Loomis,* 141 Mich 547; 105 NW 4 (1905); 1A Sutherland, Statutory Construction (4th ed), § 22.24, p 162. Const 1963, art 4, § 24 does not require, as defendant contends, that the title disclose every provision of the act or that the act be no more comprehensive than is indicated by the title. As has been frequently stated by the Michigan Supreme Court:

> "While the object must be expressed in the title, it is to the body of the law that we must look to determine whether it embraces more than one object." *Board of Supervisors v Reed,* 243 Mich 120, 122; 219 NW 656, 657 (1928).

See also, *Attorney General v Union Guardian Trust Co,* 273 Mich 554; 263 NW 866 (1935); *In re Brewster Street Housing Site,* 291 Mich 313; 289 NW 493 (1939). Under that proposition of law, it is not fatal that the act has provisions which are not disclosed in the title, as long as the provisions are consistent with the object of the act as expressed in the title. As long as the act is concerned with but one object only, it is not necessary that the title include a summary of all of the provisions of the act.

> "It is not required, however, that the title be an index to, or a table of contents of, the provisions of the act, or set out the details thereof, but it need only indicate the general contents and scope of the act, and a title is sufficient if it gives reasonable notice of the subject of the statute, so as to clearly apprize the Legislature and the public generally of the purposes of the act and the interests likely to be affected thereby." 21 Michigan Law & Practice, Statutes, § 33, p 45.

The provisions of 1867 PA 131 are germane to the subject of the amended act, 1861 PA 164, which was, originally, "AN ACT to establish the Detroit house of correction and authorize the confinement of convicted persons therein". Thus, for example, § 1 of the supplementary act authorizes the confinement of convicted females in the Detroit House of Correction. Section 2 of the act (repealed by 1972 PA 179) provided for transfer of female prisoners from state prisons to DeHoCo under certain conditions. Section 3 of the supplementary act allows confinement in DeHoCo of certain persons until the posting of bail for good behavior. Section 4 of the supplementary act authorizes the confinement in the Detroit House of Correction of prisoners convicted by a Federal court sitting in this state, and § 7 added by 1893 PA 93 prohibits the confinement in DeHoCo of persons convicted by courts of other states or by Federal courts other than those sitting in Michigan. 1867 PA 131, § 5, applies to all persons confined in the Detroit House of Correction all laws in force applicable to persons confined in the state prison. Section 8 of the supplementary act added by 1893 PA 93 sets limits upon the employment of free labor (inmates) in DeHoCo. Clearly, 1867 PA 131 has but one object, to supplement 1861 PA 164, and the several provisions of the later act are germane to the earlier one.

In summary, we find no constitutional deficiencies with the statutes creating and sustaining the continued existence of the Detroit House of Correction.

Affirmed.

All concurred.