Lamont C. **ETHERIDGE,** Plaintiff,

v.

Brian **EVERS,** Christina Bates, and Laura Dotson, Defendants.

Civil Action No. 03–CV–72514–DT.

United States District Court, E.D. Michigan, Southern Division.

June 4, 2004.

Lamont C. Etheridge, Coldwater, MI, pro se.

Christine M. Campbell, Michigan Department of Attorney General Corrections Division, Lansing, MI, for Defendants.

## ORDER AFFIRMING MAGISTRATE JUDGE MONA K. MAJZOUB'S REPORT AND RECOMMENDATION

O'MEARA, District Judge.

The Court having reviewed the Magistrate Judge's Order, as well as any objections thereto filed by the parties, and being fully advised, now therefore;

IT IS ORDERED that the Court affirms the magistrate Judge's Report and Recommendation.

## REPORT AND RECOMMENDATION

MAJZOUB, United States Magistrate Judge.

**RECOMMENDATION:** This Court recommends that Defendants' Motion For Summary Judgement be GRANTED as Plaintiff has failed to establish a violation of his constitutional rights.

\* \* \*

Plaintiff, currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed the instant complaint, *pro se*, on June 27, 2003 pursuant to 42 U.S.C. § 1983. Plaintiff alleges various constitu-

tional violations by Defendant Brian Evers, a Resident Unit Manager (RUM) at Gus Harrison Correctional Facility (ARF), in Adrian, Michigan, Christina Bates, a Correctional Officer at ARF, and Laura Dotson, former Manager of Prisoner Affairs for MDOC. Defendant Dotson has yet to be served with a copy of this complaint. The case was referred to Magistrate Judge Wallace Capel, Jr., for all pretrial proceedings. On October 8, 2003, the Defendants Evers and Bates filed a Rule 56(b) Motion For Summary Judgment and on February 9, 2004, this Court issued Administrative Order 04–AO–10 reassigning the instant action from Magistrate Judge Wallace Capel, Jr., to Magistrate Judge Mona K. Majzoub.

On October 12, 2000, Resident Unit Officer Krauss was instructed to search Plaintiff's cell. Krauss found and confiscated $189.72 in store goods plus an additional $285.60 in United States postage stamps (Exhibit 2, Administrative Hearing Report, attached to Plaintiff's Complaint). Defendant Evers provided Plaintiff with a Notice of Intent To Conduct An Administrative Hearing to determine the disposition of the goods and postage stamps (Exhibit 1, *Id.*). Following the administrative hearing, Plaintiff was to receive $65.00 worth of store goods of his choosing and $10.00 in postage stamps pursuant to Policy Directive (PD) 04.07.112 (limits prisoners to no more than $75.00 worth of expendable or consumable merchandise)(Exhibit 2, Administrative Hearing Report). The remaining $275.60 worth of postage stamps was to be turned over to the Prisoner Benefit Fund because the rightful owners could not be determined, pursuant to PD 04.07.112. *Id.* The remaining store goods were to be sent out of the prison at Plaintiff's direction and expense. *Id.*

On October 26, 2000, Plaintiff filed an administrative grievance (ARF 00–10–2202–07–A) complaining of Defendant Ever's decision to confiscate his store goods and postage stamps. Plaintiff's grievance was appealed and denied at all three steps of the grievance process (Defendant Laura Dotson signed the Step III grievance response).

Next, Plaintiff alleges that Defendant Evers "denied [him] the privilege of ordering a pair of shoes, of which was clearly my right to do so as MDOC Policy Directive states in P.D. 04.07.112" (Plaintiff's Complaint, pg. 2, ¶ 16). Plaintiff filed an administrative grievance asserting that although he was entitled to three pairs of shoes, he then had only two pairs. His Step I grievance was denied and Plaintiff appealed to Step II of the grievance process. The grievance officer, Thomas Bell, reversed the Step I decision and determined that Plaintiff was entitled to a third pair of shoes. Thus, the grievance was resolved in Plaintiff's favor (Exhibit H, attached to Plaintiff's Complaint).

On November 10, 2000, Plaintiff alleges that he was subjected to a "shake-down/pack-up" of his cell. Plaintiff alleges that he was asked, but refused, to sign a document attesting to the fact that his legal property was in excess of prison policy (Plaintiff's Complaint, Exhibit J). Specifically, Plaintiff asserts that:

> On 11–13–2000 [Defendant] Evers came in to work, and while performing his duties saw that I had refused to sign the document mentioned above and at some point told C/O Bates to do another pack-up on me. It was at that time that she was told to take my Legal Property along with my foot-locker that he (RUM Evers) considered as contraband. C/O Bates then informed Rum Evers that my personal property was not in any kind of excess; however, RUM Evers stated to me, and I quote "You have to[o] much property and I will not give

you your legal property back until such time as a hearing can be held."

(Plaintiff's Exhibit J). Plaintiff's foot-locker was removed from his cell. Plaintiff was issued a Notice of Intent To Conduct An Administrative Hearing to determine if, under prison policy, Plaintiff was permitted to keep the foot-locker (Plaintiff's Exhibit I). Before an administrative hearing was held, Plaintiff filed an administrative grievance seeking the return of his legal papers that were contained inside of the confiscated foot-locker. The response to the administrative grievance indicated that the matter was resolved and Plaintiff's legal papers had been returned to Plaintiff's possession (Plaintiff's Exhibit J).

On December 4, 2000, Plaintiff alleges that he gave his prison identification card to Defendant Bates who, in return, gave him a television remote control (Plaintiff's Complaint, pg. 3, ¶ 21). Plaintiff then alleges that:

> When I went to return the remote, RUO Bates had left the unit. I gave the remote to the officer who was working the unit with [Defendant] Bates. The officer did not know where my I.D. card was, and told me that I would have to wait until [Defendant] Bates returned back to the unit to get my I.D. card back. Chow was called for the unit, the officer told me to go to chow, knowing that I didn't have my I.D. card. The proper procedure would have been for the officer to write me a pass, since I did not have my I.D. card. He didn't write a pass and since he gave me permission to go to chow, I had no reason to believe that I was committing an offense. Upon leaving the chow hall, I was stopped by Officer Gallagher, who asked me for my I.D. card. Officer Gallagher, knew that I didn't have my I.D. card on my as Sgt. Knight told him to shake me down.

(Plaintiff's Complaint, pg. 3, ¶¶ 21–27). Officer Gallagher wrote Plaintiff a major misconduct ticket for Plaintiff being "out of place".

Plaintiff's final complaint is that on January 12, 2001, Defendant Evers searched Plaintiff's cell and confiscated $2.11 in postage stamps (Plaintiff's Exhibit M). Defendant Evers issued Plaintiff a Notice of Intent To Conduct Administrative Hearing to determine the disposition of the stamps. During the administrative hearing held on January 19, 2001, it was determined that Plaintiff was on a funds limitation and his account history showed no store purchases since the implementation of the last funds limitation on October 13, 2001. Plaintiff asserted that he "borrowed part [of the postage stamps] from [prisoner] Harrell and part from [prisoner] Big Tiny, I gave him my chicken" (Plaintiff's Exhibit 11). The disposition of the stamps was detailed in the hearing report:

> Due to prisoner Etheridge being on the funds limitation prisoner Etheridge had to find other means to obtain the stamps. These other means include exploitation (based on a confidential statement) and corruption of other prisoners. The stamps in question are to be donated to the Prisoner Benefit Fund.

(Plaintiff's Exhibit 11). Thus, the stamps were disposed of according to prison policy. On April 17, 2001, Plaintiff filed a complaint with the Office of the Legislative Correctional Ombudsman regarding all of the aforementioned events.

Plaintiff comes to this Court contending that the shakedowns and seizure of his stamps and personal property were in violation of MDOC policy and that the Defendants conspired and engaged in a pattern of harassment in violation of his due process rights. Consequently, Plaintiff seeks monetary damages of $275.60 and punitive damages of $10,000 from each defendant.

Defendants contend, however, that they are entitled to summary judgment under Fed.R.Civ.P. 56(b) because the Plaintiff has failed to state a claim upon which relief can be granted and there is no genuine issue of material fact.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir.2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

## DEFENDANT DOTSON

Defendant Dotson was named as a Defendant based on her participation in the grievance process. More specifically, Dotson denied Plaintiff's Step III grievance appeal regarding the disposition of $275.00 worth of stamps and excess store goods (Plaintiff's Exhibit E). Plaintiff does not allege that Dotson had any involvement in his claims other than her signature on the Step III grievance appeal response. Defendants contend that Dotson should be dismissed based on her lack of personal involvement. This Court agrees.

 Claims which are based simply on the denial of a grievance do not state a claim of constitutional dimension. *See Martin v. Harvey*, 14 Fed.Appx. 307, 309, 2001 WL 669983, *2 (6th Cir.2001) (unpublished) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... the claimed ... acts[ ]."); *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D.Mich.1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them."). In order to state a claim for monetary damages under § 1983, the plaintiff must allege some specific, personal wrongdoing on the part of the individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Therefore, without more, Plaintiff fails to state a claim against Defendant Dotson. Under section 1915A of the Prison Litigation Reform Act, a district court may dismiss a complaint, or any portion of it, if "(1) it is frivolous, malicious, or fails to state a claim upon which relief may be granted; ..." Accordingly, this Court recommends that Defendant Dotson, who has

not yet been served, be dismissed pursuant to 28 U.S.C. § 1915A(b).

## DEFENDANT EVERS

### 1. Due Process Claim; Deprivation of Property

■ Plaintiff alleges several constitutional violations by Defendant Evers. First, he alleges that Evers improperly confiscated his postage stamps and excess store goods[1]. Plaintiff was permitted to send the excess store goods outside of the prison. Thus, Plaintiff's due process claim (deprivation of property) relates only to the confiscated postage stamps. Plaintiff argues that he should have been allowed to mail the confiscated postage stamps, worth more than $250, outside of the prison just as he was permitted to do with the excess store goods. Defendant Evers asserts that he acted in accordance with prison policy by confiscating Plaintiff's excess stamps. Plaintiff asserts, on the other hand, that Defendant Evers acted contrary to prison policy. Plaintiff's claim, based on the alleged unlawful confiscation of his postage stamps, is not cognizable under § 1983 for the following reasons.

First, in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court held that the Due Process Clause is not implicated by a state official's negligent act which causes unintended loss of, or injury to, life, liberty or property. Furthermore, even the intentional deprivation of property does not violate due process when there is an adequate state tort remedy available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The State of Michigan provides adequate post-deprivation remedies for both negligent or intentional

conversions of property. *Green v. State*, 30 Mich.App. 648, 186 N.W.2d 792 (1971), *aff'd.*, 386 Mich. 459, 192 N.W.2d 491 (1971). For instance, Michigan allows for loss-of-property suits against the State in its Court of Claims, Mich. Comp. Laws § 600.6401 et seq., where compensation for alleged unjustifiable acts of state officials can be pursued. Since there was no indication that such remedies are inadequate or unavailable, Plaintiff has failed to state a due process claim under the Fourteenth Amendment for which relief can be granted.

### 2. Fourth Amendment Claim; Search and Seizure

■ Plaintiff also argues that Defendant Evers violated his constitutional rights by participating in searches of his cell (shakedowns). Plaintiff is not entitled to relief under § 1983 for these alleged events. In *Hudson v. Palmer*, 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that prisoners have no legitimate expectation of privacy in, and the Fourth Amendment's prohibition against unreasonable searches does not apply to, prison cells. As such, Plaintiff has failed to state a constitutional claim against Defendant Evers based on his participation in searching Plaintiff's cell. Plaintiff's remaining complaints regarding Defendant Evers (the confiscation of a second foot-locker and not allowing Plaintiff to buy a third pair of shoes) were resolved through the administrative grievance process, and thus, are no longer at issue.

### 3. First & Fourteenth Amendment Access to the Court

■ In Plaintiff's Response and Objection To Defendant's Motion For Sum-

---

1. Plaintiff further alleges he was never given a receipt or verification of deposit that the confiscated stamps were turned over to the prisoner benefit fund. Instead, Plaintiff alleges that Defendant Evers committed a larceny and theft under M.C.L. § 750.356. It is not within the province of this Court to investigate or pursue allegations of criminal conduct. Those tasks are reserved to the state and federal law enforcement agencies.

mary Judgment, he alleges that he has been denied access to the courts because Defendant Evers confiscated his postage stamps ("Plaintiff claims that the Defendant, Brian Evers denied plaintiff access to the court, by taking plaintiff's stamps"). Under the 'petition clause' of the First Amendment to the Constitution, a prisoner is guaranteed a right of access to the courts. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)(stating, "the right of access to the courts is an aspect of the First Amendment right to petition").[2] In order to prove that a prisoner has been denied meaningful access to the courts, he must prove that he has suffered, or will imminently suffer, an actual harm in his pursuit of a legal claim. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)(stating, "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known [or] that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint"). Here, Plaintiff fails to allege, let alone demonstrate, facts sufficient to support an access to the courts claim. Seemingly, Plaintiff contends that without the postage stamps confiscated by Defendant Evers he could not pursue a legal rights because he could not send legal materials to a court. Plaintiff's access to the court claim is bare, conclusory, and wholly unsupported by an allegation or showing that he was harmed in the pursuit of a legal claim because of a lack of postage stamps. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted based on access to the courts.

## ALLEGATIONS OF CONSPIRACY AND RETALIATION BY DEFENDANTS BATES AND EVERS

### 1. Conspiracy Claim

Plaintiff's remaining conspiracy and retaliation claims are lodged against Defendants Bates and Evers. Plaintiff contends that Bates retained his prison identification card, contrary to prison policy, after he checked out a television remote control. He alleges that when he returned the remote, Bates retained his I.D. card. Chow was called for Plaintiff's unit and although he did not have his I.D. card, Plaintiff alleges that a corrections officer told him to go to chow without the I.D. He then went to the chow hall and was shaken down at which time he could not produce his prison I.D. card. Corrections Officer Gallagher wrote Plaintiff a major misconduct ticket. Based on these allegations, Plaintiff alleges that Bates "conspired to entrap me into a major misconduct ticket". Plaintiff then points out, in his Exhibit 10, that Bates admitted to calling over to the "chow hall 'to inform yard staff that I was without my I.D. card.'" Defendant Bates indicated, however, that she did not call the chow hall to have him shaken down (Plaintiff's Exhibit 10(b)). In the Major

**2.** Some courts have found that the right of access to the courts is implicit in the Due Process clause of the Fourteenth Amendment. *See Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)(finding that the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights); *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(referring to due process claim based on access to the courts).

Misconduct Report, under the section entitled, Reviewing Officer's Action, it indicated that "RUO Bates states she did call over to F/S to inform yard staff that [Plaintiff] was w/o I.D." (Plaintiff's Exhibit L(10)). During the subsequent investigation, Defendant Evers indicated that he requested that Plaintiff be shaken down, "stating that the unit T.V. remote was missing and [Bates] had his I.D." Thus, the Defendants contend that Plaintiff checked out the remote in exchange for his I.D. card. Apparently, the remote was later missing. Plaintiff's I.D. card had not been picked up so, seemingly, he was assumed to still have the television remote in his possession. Plaintiff alleges that Defendants Bates and Evers conspired to entrap him into getting a major misconduct ticket. Plaintiff's claim, if any, is not cognizable by this Court for the following reasons.

 In order for a Plaintiff to survive a Motion for Summary Judgment in a § 1983 conspiracy action, he must set forth specific facts showing either the existence or the execution of the claimed conspiracy. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987). Furthermore, these facts must show overt acts related to the promotion of the conspiracy and some link between the alleged conspirators. Plaintiff must present facts that the conspirators agreed to commit an act which deprived him of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C.Cir.1984). It is essential that the conspiratorial conduct in fact resulted in a violation of plaintiff's constitutional rights. *Vaden v. Village of Maywood*, 809 F.2d 361, 366 (7th Cir. 1987).

 In the instant Complaint, Plaintiff has failed to establish a violation of his Constitutional rights.[3] The record demonstrates only that Plaintiff check-out a television remote control, in exchange for his prison I.D. card, and that later he went to the chow hall without his I.D. card while the remote was still missing. The logical inference is that Plaintiff still had the remote and prison officials still had his prison I.D. card. As such, Defendant Evers contacted yard staff to inform them that Plaintiff was without his prison I.D. as required by prison policy. Plaintiff has failed to demonstrate that the Defendants acted in concert with one another for the purpose of entrapping Plaintiff into a major misconduct ticket. Plaintiff's ticket was issued pursuant to prison policy. Having found no evidence of, and the Plaintiff having presented only conclusory

---

**3.** Additionally, Plaintiff failed to allege exhaustion as to his conspiracy or retaliation claims. The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. The Sixth Circuit has held that "prisoners filing a § 1983 case involving prison conditions must allege and show that they have exhausted all available state administrative remedies" before a district court may adjudicate their civil rights claims, and has also held that the district court should enforce this requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.1998), *cert. denied*, 525 U.S.

833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998). Compliance with this provision requires that prisoners file a grievance against the person(s) they ultimately seek to sue, *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.2001), and merely grieving prison conditions, without identifying any particular person who my be responsible, is insufficient. *Gibbs v. Bolden*, 151 F.Supp.2d 854, 857 (E.D.Mich.2001). Plaintiff has provided no documentation that he attempted to exhaust his administrative remedies at any level as to either Defendant Evers or Bates on his conspiracy or retaliation claims.

statements alleging, a conspiracy, this Court finds Plaintiff's conspiracy claim to be wholly without merit. Vague and conclusory allegations of conspiracy without specific facts are insufficient to state a claim. *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir.1987); *Smith v. Rose,* 760 F.2d 102, 106 (6th Cir.1985).

### 2. Retaliation Claim

Finally, Plaintiff raises a claim of retaliation and harassment by Defendant Evers and "his co-worker's [sic]" (Plaintiff's Response to Defendants' Motion, pg. 4). In order to prove a claim based on retaliation, the Plaintiff must prove that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two, that is, the adverse action was motivated at least in part by the Plaintiff's protected conduct. *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (citations omitted). Here, Plaintiff fails to allege any facts to support a claim based on retaliation. There is no indication that he was engaged in protected conduct. Plaintiff only claims "that the Defendant, Brian Evers then set in motion the contineous [sic] *Retaliation & Harassment* by his co-worker's [sic]" (Plaintiff's Response, pg. 4). Plaintiff's one sentence assertion fails to state a claim upon which relief can be granted.

### *NOTICE TO PARTIES REGARDING OBJECTIONS*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Services,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

May 28, 2004.